# United States Court of Appeals
## For the First Circuit

No. 20-1855

VÍCTOR J. SALGADO & ASSOCIATES INC., as 100% Stockholder of
Víctor J. Salgado & Associates, Inc.; VÍCTOR J. SALGADO-MICHEO,
in his capacity and as Stockholder of Víctor J. Salgado &
Associates, Inc.; ANA SALGADO-SALGADO, in her capacity and as
Stockholder of Víctor J. Salgado & Associates, Inc.,

Plaintiffs, Appellees,

v.

RAFAEL CESTERO-LOPATEGUI; JUAN A. MOLDES-RODRÍGUEZ; ALEXANDER
ADAMS; JAVIER RIVERA RÍOS,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Carlos Lugol-Fiol, with whom Fernando Figueroa-Santiago,
Solicitor General of Puerto Rico, and Isaías Sánchez-Báez, Former
Solicitor General of Puerto Rico, were on brief, for appellants.
Damian R. LaPlaca for appellees.

May 12, 2022

**LYNCH**, **Circuit Judge**.  This is an appeal from the denial of the automatic stay under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241,[1] sought by Puerto Rico government officials in this 42 U.S.C. § 1983 civil rights action against them.  Defendants-appellants are government officials whose defense has been assumed by the Commonwealth of Puerto Rico pursuant to P.R. Laws Ann. tit. 32, §§ 3085-3092a, the Commonwealth's legal representation and indemnification statute commonly referred to as "Law 9."

We reverse the district court's denial of defendants' motion for entry of the automatic stay under 11 U.S.C. § 922, incorporated into PROMESA through 48 U.S.C. § 2161(a), and order entry of the stay.

## I.

On September 17, 2019, plaintiffs-appellees (Víctor J. Salgado & Associates, Inc., Víctor J. Salgado-Micheo, and Ana Salgado-Salgado), who owned and operated the Integrand Assurance Company, sued defendants in their personal capacities under Section 1983 in the United States District Court for the District

---

[1]    In 2016, Congress passed PROMESA in response to the government debt crisis in Puerto Rico.  See Union De Trabajadores De La Industria Eléctrica Y Riego v. FOMB (In re FOMB), 7 F.4th 31, 35 (1st Cir. 2021).  "Title III of PROMESA made many sections of the Bankruptcy Code [including the automatic stay] applicable in restructuring proceedings for Puerto Rico and its instrumentalities."  Id.

of Puerto Rico. Defendants-appellants Rafael Cestero-Lopategui, Alexander Adams, and Javier Rivera-Ríos are officers or employees of the Puerto Rico Office of the Insurance Commissioner ("PROIC"). Defendant-appellant Juan A. Moldes-Rodríguez was contracted by PROIC to perform duties as the rehabilitator, and then liquidator, of the Integrand Assurance Company.[2] Plaintiffs allege that the government officials violated their First Amendment rights, the Equal Protection Clause, and the Due Process Clause. Plaintiffs further allege a civil conspiracy by the officials to deprive them of their constitutional rights, a failure to prevent wrongful acts, and violations of Commonwealth statutory law. Plaintiffs request declaratory relief, injunctive relief "[p]ermanently enjoin[ing] co-defendants from continuing to use the color of state law to deny Plaintiffs their Constitutional and legal rights," compensatory damages in the amount of $30 million, and additional punitive damages.

The defendant government officials then petitioned the Commonwealth Secretary of Justice ("Secretary") for legal representation under Law 9. See P.R. Laws Ann. tit. 32, §§ 3085-3092a. The Secretary granted legal representation to each defendant under Law 9 and has borne the costs of that

---

[2]     We refer to all four defendants as government officials.

representation.[3] As to indemnification in the case of a finding of liability, the Secretary stated, "[s]hould judgment eventually be handed down against [defendants] and in [their] personal capacit[ies] or should costs and fees be levied against [them], [defendants] will have to petition for the benefit of payment of such judgment."

On November 7, 2019, defendants filed a "Notice of Automatic Stay of Proceedings Pursuant to Title III of PROMESA" in the district court. The district court never issued an order directly on the Notice of Automatic Stay.[4]

In August 2020, the district court issued four discovery orders:

- On August 10, a magistrate judge granted plaintiffs' motion for a scheduling order and to depose defendants.

---

[3] Plaintiffs argue that defendants' petitions for legal representation did not comply with the Law 9 regulations promulgated by the Secretary.

This argument has no bearing on the question at issue in this appeal. Whether or not defendants' petitions complied with the Law 9 regulations, the Secretary granted legal representation to each defendant. Law 9 does not grant plaintiffs standing to challenge the Secretary's application of its own regulations. Cf. P.R. Laws Ann. tit. 32, § 3087 (permitting a petitioner to seek judicial review of an adverse decision by the Secretary).

[4] On February 21, 2020, a panel of this court issued an order prudentially staying defendants' qualified-immunity appeal -- not at issue in this appeal -- under Title III of PROMESA. On July 9, 2020, this court subsequently entered an order clarifying that the PROMESA stay applies only to the qualified-immunity appeal and "[w]e express no view as to whether the PROMESA stay applies to the district court's proceedings."

- 4 -

The magistrate judge also ordered the production of documents.

- On August 18, the district court granted plaintiffs' motion to compel and denied defendants' motion for reconsideration of the August 10 order, stating that defendants must comply with the magistrate judge's August 10 order.

- On August 20, the district court entered an order again denying defendants' motion for reconsideration and stated:

  > The Court stresses the following: This lawsuit is not against the Commonwealth nor its instrumentality. It is a civil rights action against Defendants in their personal (and not official) capacities. As such, PROMESA does not stay the litigation. The fact that the Commonwealth Attorney General has provided legal representation pursuant to Law 9, moreover, does not convert the action into one against the Commonwealth. Law 9 benefits may be terminated at any time, even after a verdict of liability. See Guadalupe Baez v. Pesquera, 269 F. Supp. 3d 1 (D.P.R. 2017). Personal capacity defendants sued alone cannot invoke PROMESA as a shield to litigation prompted by civil Rights violations.

- Also on August 20, the district court issued an order confirming the discovery schedule and restating that the August 10 and August 18 orders remain in effect.

On August 18, 2020, defendants filed a notice of interlocutory appeal from the August 10 and August 18 orders. After the district court issued its August 20 orders, defendants filed an amended notice of appeal adding those two orders to their appeal.

## A.   Standard of Review

We review de novo the district court's legal determinations.[5]   See Colón-Torres v. Negrón-Fernández, 997 F.3d 63, 68 (1st Cir. 2021).   The question in this appeal is a pure question of law:   whether the automatic stay provision in Title III of PROMESA applies to this action.   Thus, our review is entirely de novo.   See id.

## B.   Analysis

Section 301(a) of PROMESA, 48 U.S.C. § 2161(a), expressly incorporates Section 922 of the Bankruptcy Code -- which provides for an automatic stay during bankruptcy proceedings to adjust municipal debt -- into Title III proceedings.   Section 922 stays:

> the commencement or continuation, including
> the issuance or employment of process, of a
> judicial, administrative, or other action or

---

[5]   We have appellate jurisdiction in this case because the order of a district court denying the PROMESA Title III automatic stay is appealable as a final decision pursuant to 28 U.S.C. § 1291, or in the alternative, under the collateral order doctrine. See Mun. of San Juan v. Puerto Rico, 919 F.3d 565, 574 (1st Cir. 2019).

The district court's first August 20 order directly addressed the Title III automatic stay and held that it did not apply to this action.   The court held that "PROMESA does not stay the litigation" because "[t]his lawsuit is not against the Commonwealth nor its instrumentality[,]" and "[t]he fact that the Commonwealth Attorney General has provided legal representation pursuant to Law 9, moreover, does not convert the action into one against the Commonwealth."

> proceeding <u>against an officer or inhabitant of</u>
> <u>the debtor that seeks to enforce a claim</u>
> <u>against the debtor</u>[.]

11 U.S.C. § 922(a)(1) (emphasis added).

The stay provision most familiar to bankruptcy practitioners is found in Section 362.[6] That stay applies to proceedings brought directly against the debtor or its property. 11 U.S.C. § 362(a).[7] Section 922, by contrast, is an additional provision, specifically made applicable in municipal bankruptcies and proceedings under Title III of PROMESA. It provides for a stay of actions brought against, among others, officials of the debtor (rather than the debtor or its property) where the actions

---

[6] Section 301(a) of PROMESA also incorporates Section 362 of the Bankruptcy Code, the general stay provision. Section 362 stays:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).

[7] In enacting these various provisions requiring an automatic stay, Congress intended that the fundamental purpose of the stay was to provide a "breathing spell" for debtors in bankruptcy proceedings. <u>In re Jefferson Cnty.</u>, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013); <u>see also</u> <u>In re Lomas Fin. Corp.</u>, 117 B.R. 64, 67 (S.D.N.Y. 1990), <u>remanded on other grounds</u>, 932 F.2d 147 (2d Cir. 1991); H.R. Rep. No. 95-595, at 340 (1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5963, 6296-97.

"seek[] to enforce a claim against the debtor." Id. § 922(a)(1). Under the Bankruptcy Code, a "claim" is a "right to payment" whether or not it is "contingent" or "disputed." Id. § 101(5). Section 922 applies where the action seeks to establish a right to payment, even if contingent. The difference between Sections 362 and 922 "is the nominal target of the lawsuit or enforcement action being stayed: Section 362 applies only to suits 'against the debtor,' while Section 922 also stays actions against 'officer[s] or inhabitant[s] of the debtor.'" Colón-Torres, 997 F.3d at 69 (alterations in original).

Plaintiffs concededly bring this action against officials of the Title III debtor. They nevertheless suggest that because they opted not to sue the debtor directly, one cannot classify this action as one that "seeks to enforce a claim against the debtor." But were that so, Section 922 would have little if any role at all because actions brought directly against the debtor are already stayed by Section 362. By its very existence, Section 922 makes clear that for automatic stay purposes, an action can seek to enforce a claim against a governmental debtor even if it only does so indirectly.

This case provides an apt example: The complaint seeks more than $30 million in damages, yet no party suggests that any defendant is good for any substantial portion of that amount. Any hope for meaningful recovery necessarily rests on the possibility

that the Commonwealth will in some manner step into the shoes of its officials. Moreover, by threatening public officials with financial ruin for actions they took in the course of their duties, the lawsuit generates a substantial pressure on the governmental employer to provide a defense and to indemnify the official.

Plaintiffs protest that the Commonwealth has no obligation to indemnify. Rather, any such indemnity is contingent on an exercise of discretion not yet taken. But a "claim" under Section 922(a)(1) includes "contingent" "right[s] to payment," whether "disputed" or "undisputed." 11 U.S.C. § 101(5). Here, the suit arises from governmental actions taken by defendants. The Commonwealth has already agreed to cover defense costs. As we have explained, the sum of the damages requested make clear that the action does indeed have as one of its targets the Commonwealth's purse.

Section 922 was enacted to prevent creditors from artfully pleading around the Section 362 automatic stay by bringing an action against an officer or inhabitant of a municipality, rather than the municipality itself. See Colón-Torres, 997 F.3d at 69 n.5 ("The legislative history of Section 922 evinces Congress's intent to plug a hole left open by Section 362."); see also H.R. Rep. No. 95-595, at 398 ("The automatic stay provided under Section 362 of Title 11 is incomplete for a municipality because there is the possibility of action by a creditor against

an officer or inhabitant of the municipality to collect taxes due [to] the municipality.").[8]  Through the incorporation of Section 922 into PROMESA, Congress intended these protections to be extended to the Commonwealth and its officers or inhabitants.[9]

State and municipality indemnification policies for officials "further[] the important interest of attracting and retaining competent officers, board members, and employees." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 713 n.9 (1978) (Powell, J., concurring).  Such policies permit "agency employees

---

[8]  In the analogous Section 362 automatic stay context, courts have declined to "elevate form over substance" and have consistently held that plaintiffs may not avoid the Section 362 automatic stay by artfully pleading an action against a non-debtor defendant where the allegations were actually against the debtor. In re Jefferson Cnty., 491 B.R. at 286 (collecting cases).  In In re Lomas Financial Corp., the district court agreed with the bankruptcy court's conclusion that naming the debtor's officers in the suit was merely a "transparent attempt . . . to end run the automatic stay," and that the Section 362 stay applied to the action against the officers based on the indemnification agreement between the debtor and its officers, the harm to the debtor's reorganization, and the potential for collateral estoppel.  117 B.R. at 66-68; see also In re Jefferson Cnty., 491 B.R. at 287 ("[T]he fact that the Assured Complaint does not actually name the County as a defendant is simply not controlling. . . .  [T]he County has an indemnification agreement with JPMorgan that could make it responsible for any recovery Assured wins against JPMorgan.").

[9]  Plaintiffs argue that defendant Juan A. Moldes-Rodríguez is not a public employee entitled to Law 9 benefits.  It is not relevant whether Moldes-Rodríguez is a public employee employed by PROIC.  Moldes-Rodríguez, at a minimum, is an inhabitant of the Commonwealth, and so the action against him for his performance of public duties is eligible for the automatic stay.  See 11 U.S.C. § 922, 48 U.S.C. § 2161(a).  As explained above, a "claim" extends to asserted rights of payments, even if contingent.

- 10 -

to perform their official duties without fear of personal liability, whether pursuant to state or federal law, so long as the conduct is performed during the course of their employment." Wiehagen v. Borough of N. Braddock, 594 A.2d 303, 306 (Pa. 1991); see Burgos-Yantin v. Mun. of Juana Diaz, Civil No. 07-1146, 2013 WL 435203, at *2 (D.P.R. Jan. 2, 2013) ("One of the purposes that Puerto Rico legislators had in mind when Law 9 was passed was to protect public officials or employees who are sued in federal court in their personal capacity.").

It is clear that if the Commonwealth had a mandatory (rather than permissive) indemnification policy, the Section 922 automatic stay would apply. Cf. Colón-Torres, 997 F.3d at 73 & n.10. In the related Chapter 9 municipal bankruptcy context, courts have consistently found that mandatory indemnity policies were dispositive on the automatic stay issue. See id. at 73 n.10; see also Deocampo v. Potts, 836 F.3d 1134, 1144 n.13 (9th Cir. 2016) (noting that courts have "ruled that an indemnity obligation triggers the automatic stay provisions of 11 U.S.C. §§ 362(a) & 922"); Williams v. Kenney, No. CIV S-07-0100, 2008 WL 3540408, at *8 (E.D. Cal. Aug. 12, 2008) (holding that, even when a city is "no longer a party," an action is "against the debtor" when the city is "required to indemnify the employee for the amount of the judgment or settlement"); In re City of Stockton, 484 B.R. 372, 376 (Bankr. E.D. Cal. 2012) (holding that, because the city had

"undertaken [the individual officials'] defense" and would "be required to pay the judgment," "the civil action against the individuals '[sought] to enforce a claim against the debtor' within the meaning of § 922(a)" (quoting 11 U.S.C. § 922(a)(1))).

Although a mandatory indemnification policy would be dispositive on this issue, "courts have clarified that absolute indemnity is not required" for the automatic stay to apply. In re Jefferson Cnty., 491 B.R. at 289 (collecting cases). We agree with the view taken by courts in Chapter 9 and Chapter 11 bankruptcy actions that a commitment to indemnity costs is not required. See, e.g., id. (holding that "the 'possibility' of a right of indemnification is sufficient"); Robert Plan Corp. v. Liberty Mut. Ins. Co., No. 09-CV-1930, 2010 WL 1193151, at *4 (E.D.N.Y. Mar. 23, 2010) ("[G]iven the possibility that the Officers had such an absolute right [of indemnification], the Bankruptcy Court properly protected the estate by staying the contempt case"); In re Fiddler's Creek, LLC, No. 10-BK-03846, 2010 WL 6618876, at *5 (Bankr. M.D. Fla. Sept. 15, 2010) (holding that the existence of "potential" indemnity and contribution claims was sufficient to implicate the automatic stay); see also In re Am. Film Techs., Inc., 175 B.R. 847, 851-55 (Bankr. D. Del. 1994) (holding that a court need not formally determine that a non-debtor defendant is indemnified by the debtor to apply the automatic stay).

We do not need to accept a "possibility" or "potential" for indemnification test in order to find error in the denial of the automatic stay in this case. Law 9 provides that a Commonwealth official sued in his personal capacity for alleged civil rights violations "may request the Commonwealth of Puerto Rico to provide him with legal representation, and to subsequently assume the payment of any judgment that may be entered against his person." P.R. Laws Ann. tit. 32, § 3085. Upon the official's request and cooperation, id. § 3086, Law 9 provides:

> [t]he Secretary of Justice shall determine in which cases the Commonwealth shall assume legal representation and, subsequently, after considering the findings of the court or which arise from the evidence presented, he shall determine whether it is in order to pay the full judgment imposed on the public officials, ex-officials, employees or ex-employees sued[.]

Id. § 3087. Law 9 further provides that its provisions "shall not cover . . . acts or omissions incurred by an official": "[w]hen such acts or omissions constitute a crime"; "[w]hen they occur outside the scope of [an official's] official functions; "[w]hen inexcusable negligence intervenes"; and "[w]hen a different state of law has been established jurisprudentially by a final and binding judgment." Id. § 3088.

In this case, the Secretary has granted legal representation to defendants under Law 9 and is currently litigating the case on their behalf. The Secretary has necessarily

- 13 -

determined that defendants are not disqualified from representation under P.R. Laws Ann. tit. 32, § 3088. Those payments for legal representation show that it is far from speculative that the Commonwealth would indemnify defendants should any judgment be entered against them. Indeed, a purpose of the Commonwealth's assumption of defense costs is to reduce the risk that such a judgment would be entered against it.

Our result is consistent with other PROMESA cases in which stays have been granted under Section 922.[10] See, e.g., Peaje Invs., LLC v. FOMB (In re FOMB), 899 F.3d 1, 6 & n.2 (1st Cir. 2018) (holding that the stay extends to a plaintiff's suit against both the Commonwealth and its officers in their official capacities for the diversion of revenue over which the plaintiff held a lien).

## III.

For the reasons stated above, we vacate the district court's orders requiring discovery to proceed, reverse the district court's denial of the stay, and order entry of the stay.

---

[10] Our circuit in unpublished opinions has also prudentially stayed several appeals in § 1983 civil rights cases based on the Commonwealth's petition to restructure its debts. See Pabon-Ortega v. Llompart-Zeno, No. 16-1599 (1st Cir. Jan. 24, 2018) ("In view of the petition to restructure its debts filed by the Commonwealth of Puerto Rico, this appeal is stayed."); Besosa-Noceda v. Capo-Rivera, No. 16-2117 (1st Cir. Jan. 23, 2018) (same); Cano-Rodriguez v. De Jesus-Cardona, No. 16-1532 (1st Cir. Nov. 27, 2017) (same).

**-Concurring Opinion Follows-**

**THOMPSON, Circuit Judge, concurring in the judgment.**
This case presents a difficult matter of first impression. Does the Commonwealth's agreement to provide representation trigger the interests served by and the applicability of the PROMESA automatic stay -- before the Commonwealth has committed to indemnify? This quandary about the breadth of the stay in these circumstances -- cast against the balancing act of considering the importance of providing judicial redress for civil rights violations without thwarting any of PROMESA's critical debt-restructuring goals -- has been percolating for a while.[11] In today's case, we resolve it.

I support the same practical and procedural outcome as my colleagues: The automatic stay under Title III of PROMESA is applicable to the underlying 42 U.S.C. § 1983 action brought against Defendants, who are officials sued in their personal capacities only and represented by the Commonwealth of Puerto Rico pursuant to the Commonwealth's representation and indemnification statute, P.R. Laws Ann. tit. 32, §§ 3085-3092 ("Law 9").

But I would reach this outcome by a different analytical route. Specifically, I would tether the PROMESA-stay-applies

---

[11] While we've certainly had occasion to discuss the scope of the relevant PROMESA stay provision in other matters, see Colón-Torres v. Negrón-Fernández, 997 F.3d 63, 69-70 (1st Cir. 2021) (collecting some examples and touching on -- but not reaching -- the stay issue we face today), we haven't yet had to reckon directly with the stay as presented in the case now before us.

conclusion only to the fact that Law 9 legal representation benefits have been conferred, leaving out of it the speculative possibility of an eventual judgment against Defendants that the Secretary of Justice then eventually, in his or her discretion, may deem indemnifiable pursuant to Law 9.

So I concur in the ultimate judgment, but write separately to explain this reasoning.

**PROMESA's Automatic Stay**

PROMESA's automatic stay "derives from two sections of the Bankruptcy Code, which are expressly incorporated into the first section of Title III," id. (citing 48 U.S.C. § 2161): Section 362, the general stay provision, stays "the commencement or continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case . . . or to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case," 11 U.S.C. § 362(a)(1); and Section 922 ("in addition to the stay provided by section 362") stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor," id. § 922(a)(1).

As my colleagues in the majority point out, we've observed that "[t]he difference between the[se] two provisions is

the nominal target of the lawsuit or enforcement action being stayed" -- while "Section 362 applies only to suits 'against the debtor,' . . . Section 922 also stays actions against 'officer[s] or inhabitant[s] of the debtor.'" Colón-Torres, 997 F.3d at 69 (quoting 11 U.S.C. §§ 362(a)(1), 922(a)(1)). But there's another important difference: Section 922 applies to claims that arose both pre-petition and post-petition, see 11 U.S.C. § 922(a)(1), whereas Section 362 applies to pre-petition claims only, see id. § 362(a)(1). Here, Defendants argue that the Section 922 automatic stay is what applies to Plaintiffs' case.[12]

The Title III Court issued a June 2017 order ruling, among other things, that pursuant to Section 922, "all persons . . . are hereby stayed, restrained, and enjoined from commencing or continuing any judicial, administrative, or other proceeding against an officer or inhabitant of the Debtors . . . that seeks to enforce a claim against the Debtors," and that "the protections of Bankruptcy Code section 922(a)(1) with respect to officers and

---

[12] It is not entirely clear whether the alleged conspiracy was formed before or after the Commonwealth entered Title III restructuring in May 2017. But based on the factual details offered in support of the complaint's allegations -- "[a]fter the huge and unexpected economic losses occurring as a result of hurricanes Irma and Maria in September 2017, the co-defendants engaged in a civil conspiracy to deprive Integrand and its stockholders of rights, privileges and immunities protected by the U.S. and Puerto Rico constitutions and federal and state laws," for example -- it seems all of these retaliatory acts that caused Plaintiffs harm transpired post-petition.

- 18 -

inhabitants of the Debtors" also apply to actions against the Commonwealth's "officers in both their official and personal capacities." Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365, and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections ¶¶ 4, 5, In re Fin. Oversight & Mgmt. Bd., No. 17-03283-LTS (D.P.R. June 29, 2017), ECF No. 543 (hereinafter "Title III Court's Stay Order").

"[I]n the ordinary bankruptcy context, the automatic stay is a 'fundamental protection' that is meant to offer the debtor 'breathing room during the period of financial reshuffling' and 'protect[] the debtor's assets from disorderly, piecemeal dismemberment outside the bankruptcy proceedings.'" Mun. of San Juan v. Puerto Rico, 919 F.3d 565, 577 (1st Cir. 2019) (quoting In re Smith, 910 F.3d 576, 580 (1st Cir. 2018)). As to PROMESA's automatic stay, the Commonwealth's "fiscal emergency" prompted Congress to observe explicitly that "[a] comprehensive approach to fiscal, management, and structural problems [was] necessary," and a stay is "essential to stabilize the region for the purposes of resolving" the financial crisis. 48 U.S.C. § 2194(m)(3)-(5). The automatic stay's purposes, according to Congress, include providing the Commonwealth "with the resources and the tools it needs to address an immediate existing and imminent crisis" and

- 19 -

giving the Commonwealth "a limited period of time during which it can focus its resources on negotiating a voluntary resolution with its creditors." Id. § 2194(n)(1), (2). As described in the "automatic stay" section of PROMESA, the ultimate goal is to resolve the Commonwealth's "longstanding fiscal governance issues" so it can "return to economic growth." Id. § 2194(n)(5).

**Law 9**

"[A]n idiosyncratic Puerto Rico [representation and] indemnity law," Whitfield v. Mun. Of Fajardo, 564 F.3d 40, 42 (1st Cir. 2009), Law 9 permits a Commonwealth official (current or former) sued in his personal capacity for alleged civil rights violations to ask the Commonwealth "to provide him with legal representation, and to subsequently assume the payment of any judgment that may be entered against his person," P.R. Laws Ann. tit. 32, § 3085.

To secure representation under Law 9, one must first apply (in writing) to the Secretary of Justice ("the Secretary"), then offer up good-faith cooperation with any investigation that follows. See P.R. Laws Ann. tit. 32, § 3086. The Secretary determines whether the Commonwealth will assume legal representation. Id. § 3087. If a judgment is ultimately rendered, the Secretary then "shall determine whether it is in order to pay the full judgment imposed on the public officials." Id.; see also Whitfield, 564 F.3d at 43.

Law 9 explains that its provisions "shall not cover" the following "acts or omissions incurred by an official": "[w]hen such acts or omissions constitute a crime"; "[w]hen they occur outside the scope of [an official's] official functions; "[w]hen inexcusable neglect intervenes"; "[w]hen a different state of law has been established jurisprudentially by a final and binding judgment." P.R. Laws Ann. tit. 32, § 3088. In addition, "the Commonwealth is not required to pay indemnity when there is a punitive damages award or judgment." Acevedo-Luis v. Pagán, 478 F.3d 35, 39 (1st Cir. 2007). Indeed, the Secretary retains discretion in determining whether indemnification will be provided: In this case, the Secretary's letter granting representation explained that a grant of indemnification would be subject to the Secretary's evaluation of proven facts, defense attorneys' recommendations, the circumstances of the case, and any evidence or other information the Department of Justice compiles -- all of this is used to determine entitlement "to the benefit of payment of judgment."

## Analysis[13]

There is no doubt that the legal issue presented here is a tricky one, made all the more difficult in view of the competing

---

[13] I pause here to note that I agree with the majority's conclusion that the district court's order denying the stay's applicability constituted a final order pursuant to 28 U.S.C. § 1291. See Mun. of San Juan, 919 F.3d at 574. Given that the

- 21 -

policy interests of providing judicial redress in the face of possible civil rights violations and honoring PROMESA's pressing debt-restructuring objectives.

But I agree with my colleagues in the majority that the answer is that the stay applies. I just disagree as to the basis for its application. I would limit it to this: When, as here, a personal-capacity-only suit is filed against officers or inhabitants of the Commonwealth, and those defendants are then granted Law 9 representation benefits by the Commonwealth, the suit's litigation should be stayed under Title III of PROMESA as the suit thus functionally and constructively involves an action or proceeding that will seek to enforce a claim against the debtor Commonwealth. Such defendants will receive legal representation from the Commonwealth, meaning the Commonwealth must pay the lawsuit's defense costs, fees, and other related expenses as a result. Based on PROMESA's language and the clear policy underpinning it, that is enough I believe to demonstrate that the just-described situation is the type of case to which the stay should automatically apply.

Here's the step-by-step of how I'd get there.

_____

parties spilled quite a bit of ink arguing over jurisdiction, I would have delved more deeply into their arguments. But, in the interest of efficiency and because the end result is the same, I leave it at "I agree we have jurisdiction over this final order."

- 22 -

PROMESA incorporated Section 922, which stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor."  11 U.S.C. § 922(a)(1) (incorporated into PROMESA by 48 U.S.C. § 2161). And the Title III Court's Stay Order makes it amply clear that all litigation against the Commonwealth is stayed, and Section 922's protections with respect to officers and inhabitants of the Commonwealth apply in all respects to the officers in both their official and personal capacities with respect to actions whereby parties pursuing such actions seek to enforce claims against the Commonwealth.

Section 101(5) of the Bankruptcy Code, as incorporated in PROMESA, defines "claim," as a

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

This definition of "claim" "is to be read very broadly and can include claims that are uncertain and difficult to estimate." Colonial Sur. Co. v. Weizman, 564 F.3d 526, 529 (1st Cir. 2009) (citing Maynard v. Elliott, 283 U.S. 273, 275-78 (1931); In re THC

- 23 -

Fin. Corp., 686 F.2d 799, 802-03 (9th Cir. 1982)). Congress deliberately amended the Code "to permit 'the broadest possible relief in the bankruptcy court,' . . . and to ensure that 'virtually all obligations to pay money [would] be amenable to treatment in bankruptcy.'" In re Hemingway Transp., Inc., 954 F.2d 1, 8 (1st Cir. 1992) (first quoting In re Black, 70 B.R. 645, 649 (Bankr. D. Utah 1986); then quoting In re Robinson, 776 F.2d 30, 34 (2d Cir. 1985), rev'd on other grounds, 479 U.S. 36 (1986)).

Then Law 9 pops up. It's clear that a decision by the Secretary to confer Law 9 representation puts the Commonwealth on the hook to foot a bill. Indeed, such a decision commits the Commonwealth to incurring all the costs of litigating the suit it has agreed to defend, and the defense will be funded by the Commonwealth's treasury.[14]

By my lights, such an agreement to pay those Law 9 benefits triggers the interests summed up by Congress when it enacted PROMESA and incorporated the Code's stay provisions. By incorporating into Title III the stay provisions of Section 922, Congress evinced a clear policy preference for deploying the automatic stay as applicable, all with an eye towards facilitating the debt-restructuring process the Commonwealth badly needs.

---

[14] Yes, Law 9 representation benefits can, under some circumstances, be revoked. See P.R. Laws Ann. tit. 32, § 3087a. That does not alter my reasoning, though, since the litigation benefits have been committed to here and have not been revoked.

- 24 -

Congress hardly hid the ball on the spiraling-financial-crisis-driven concern that prompted it to fashion PROMESA; truth be told, that's the whole point of it.  The Commonwealth's "fiscal emergency" is dire, so Congress came up with "[a] comprehensive approach" to solving the fiscal problems, and the stay was very much meant to be part of that plan -- "essential," in fact, to helping resolve the financial crisis.  48 U.S.C. § 2194(m)(3)-(5).  Congress was equipping the Commonwealth with yet another classic bankruptcy tool for its arsenal while it underwent the critical debt-restructuring process it needed to fix its fiscal problems and "return to economic growth."  Id. § 2194(n)(5); see also Mun. of San Juan, 919 F.3d at 577 (emphasizing that an automatic stay is a "'fundamental protection' that is meant to offer the debtor 'breathing room during the period of financial reshuffling' and 'protect[] the debtor's assets from disorderly, piecemeal dismemberment outside the bankruptcy proceedings'" (quoting In re Smith, 910 F.3d at 580)).

By my reading, the stay's applicability isn't just about whether a party (like Plaintiffs) seeks to enforce a claim against the Commonwealth; rather, it's about whether the "action or proceeding" seeks to enforce a claim against the Commonwealth.  See 11 U.S.C. § 922(a)(1) (staying "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that

- 25 -

seeks to enforce a claim against the debtor") (emphases added). That, as I see it, is what is happening here. Construing Section 101(5)'s "claim" language "very broadly," Weizman, 564 F.3d at 529, a grant of Law 9 benefits necessarily imbues a judicial action or proceeding with a claim that will seek to draw on the Commonwealth's fisc in the form of litigation defense expenses, and the Commonwealth's limited funds are supposed to be protected and preserved while the bankruptcy proceedings continue, per PROMESA's just-recapped Congressional imperatives. That protection is accomplished by staying proceedings that involve such a claim.

All of this guides me to and buttresses the conclusion that this proceeding against officers of the Commonwealth, who are represented by the Commonwealth pursuant to Law 9, functionally and constructively will seek to enforce a claim against the Commonwealth, bringing the entire case within the scope of Section 922 and triggering the interests served by and the applicability of the automatic stay.

There are some additional cases and concepts that guided my thinking on this. This being a matter of first impression involving the Commonwealth's unique Law 9 in conjunction with a one-of-a-kind debt-restructuring statute, there isn't a lot that's directly on point. But the related (even if distinguishable)

resources I studied still highlight some important considerations that inform this reasoning.[15]

Consider Colón-Torres, where this court explained that an action "will be stayed if it is 'against an officer or inhabitant of the debtor' and 'seeks to enforce a claim against the debtor.'" 997 F.3d at 73 (quoting 11 U.S.C. § 922). "It is hardly evident from that text," the court cautioned, "that an action against an officer in his individual capacity -- in which the Commonwealth need not get involved and indeed might choose not to get involved -- qualifies." Id. (citing Deocampo v. Potts, 836 F.3d 1134, 1138 (9th Cir. 2016) (observing the "oddity" of the fact that a municipal bankruptcy could, under Section 362, stay an action when the city wasn't a party to it)).[16] But there, unlike

_____

[15] One of the distinguishing features of some of these cases is indemnification, which I do not rely upon at all in my analysis. After I go through this additional helpful authority, I'll explain why I'm averse to linking today's stay-applies conclusion to indemnification. Not only do I believe it is unnecessary to do so -- my approach would spare us the need to do it -- but also getting into it is problematic and necessitates speculation.

[16] Deocampo, it should be noted, involved some of the themes, policies, and theories discussed here. However, that discussion came in the context of a very different procedural moment -- a municipality's bankruptcy plan of adjustment and whether such plan should discharge a judgment entered after a jury rendered a verdict in favor of the plaintiff against the municipality's officers in the excessive-force case against them. 836 F.3d at 1136. The officers had argued the judgment constituted a claim against the municipality that was "subject to adjustment under the Plan," id. at 1140, but the Ninth Circuit concluded that the mandatory indemnification statute at issue there "[did] not render a judgment or concomitant fee award against an indemnifiable municipal employee a liability of the municipal employer for purposes of

- 27 -

here, the Commonwealth had not yet gotten "involved" by bestowing any Law 9 benefits, so the Colón-Torres situation would've involved pure speculation across the Law-9 board about what might or might not happen, meaning the stay's applicability was "hardly evident." 997 F.3d at 73. Here, by contrast, the Commonwealth's involvement is undisputed: It has committed to paying defense costs.[17]

---

adjusting or discharging the debts of a Chapter 9 debtor," id. at 1143 (emphasis added). That is not the situation here. Nothing in my analysis would have affected the means by which Plaintiffs could eventually pursue their claims and seek to enforce any resulting judgment, possible future debt discharges notwithstanding. Rather, my inquiry has been trained on whether bankruptcy protection and relief in the form of the automatic stay is triggered due to the Law 9 benefits conferred. Cf. id. at 1144 n.13 (disagreeing that the discharge plan's definition of claim encompasses the judgment against the officers and distinguishing cases where an indemnity obligation triggered an automatic stay because "the discharge provisions are narrower than the automatic stay provisions, the broad reach of which furthers their purpose to freeze the status quo at the time a petition is filed," for example).

[17] Colón-Torres also went on to observe that

the legislative history of § 922, which notes that the provision accounts for 'the possibility of action by a creditor against an officer or inhabitant of the municipality to collect taxes due the municipality,' H.R. Rep. No. 95-595, at 398 (1977), does not itself suggest that the stay would apply to an individual capacity officer suit, given its focus on a very different type of action: one that targets the municipality's treasury directly.

997 F.3d at 73. For one thing, actions involving creditors are certainly quite common -- it's bankruptcy -- but creditor-driven actions aren't the only possible action that could trigger Section 922, particularly in the PROMESA context. For another, I've already said the Law 9 benefits in play here have the functional effect of bootstrapping the Commonwealth's treasury into the case. So while the pre-PROMESA legislative history of Section 922 perhaps

And then there's <u>In re City of Stockton, Cal.</u>, 484 B.R. 372 (Bankr. E.D. Cal. 2012), which both parties squabble over in terms of its import here. <u>Stockton</u> was a municipal bankruptcy case involving a request to lift a Section 922 stay on a wrongful-discharge suit brought against the City of Stockton, California and two city officers in both their personal and official capacities. <u>Id.</u> at 375-76. The bankruptcy court concluded there was no cause to grant relief from the Section 922 stay. <u>Id.</u> at 379. It explained that, "[t]o the extent that there is a judgment against the individuals, the City, having undertaken their defense, will be required to pay the judgment." <u>Id.</u> at 376 (citing Cal. Gov't Code §§ 825 & 825.2). "Hence," the court continued, "the civil action against the individuals 'seeks to enforce a claim against the debtor' within the meaning of § 922(a)." <u>Id.</u> (quoting 11 U.S.C. § 922(a)(1)). The <u>Stockton</u> court emphasized that "[t]he City has also demonstrated that active prosecution of the civil action will constitute a financial burden to the City," <u>id.</u> at 378, and more specifically that "the expense of further litigation against them will deplete the coffers of the City treasury," <u>id.</u> at 379. Ultimately, this prompted the court's conclusion that "[t]he § 922(a) stay is designed to stop such

---

"does not itself suggest" Section 922 would apply to today's case, for these reasons and the others I've discussed -- and continue to discuss -- it does apply. <u>Id.</u>

litigation in its tracks." Id. And yes, because it had undertaken the defense of these various defendants, the City would be "generally obliged to pay a judgment against them in the civil action." Id. (citing Cal. Gov't Code § 825).

Plaintiffs maintain Stockton is "inapposite" because the officials there were sued both in their individual and official capacities, and, unlike the Commonwealth's Law 9, California's system involves a "mandatory payment obligation" when it comes to indemnification. But Defendants say Stockton is spot-on because the legal defense of the city officials would come at great expense to the city, and Law 9 and California's statute are actually quite similar (with the California statute arguably affording some discretion to the city to refuse to offer representation and indemnification).

It's true that Stockton is hardly a perfect one-to-one with our case -- nothing is, that's why it's a matter of first impression. That said, its distinctions do not prevent me from viewing Stockton as instructive on a few policy points. Indeed, bypassing the indemnification pieces and the possible Law-9-esque discretion California might have when it comes to actually indemnifying, Stockton's helpfulness lies in the weight it places on representation having been promised, the financial burden on the municipality that legal defense represents, and how Section 922 operates "to stop such litigation in its tracks." 484 B.R. at

379. In those ways, Stockton and the policy considerations that drove it support the approach I would take in the instant matter.

Then consider a bankruptcy and stay concept that came up quite a bit as I studied the issues in this case: identity of interest. There are lines of bankruptcy cases explaining that, sometimes, a stay can be imposed to protect a non-debtor when there exists a so-called "identity of interest" between a debtor and the non-debtor such that the debtor, though perhaps not named or obviously targeted by a suit or other proceeding, is nonetheless a real defendant and any resulting judgment against the non-debtor would inevitably affect the debtor directly. See, e.g., A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986) (reasoning that a Section 362 stay may stay proceedings against a non-debtor codefendant when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," like when a non-debtor codefendant "is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case"); In re Slabicki, 466 B.R. 572, 580 (B.A.P. 1st Cir. 2012) (similar); In re N. Star Contracting Corp., 125 B.R. 368, 370-71 (S.D.N.Y. 1991) (also similar, explaining that "Robins and other courts have recognized that an identity of interest exists between a debtor

- 31 -

and a third party non-debtor when a right to indemnification exists," and "[t]hese courts reason that a special circumstance exists because a judgment against the non-debtor will affect directly the debtor's assets").

I do not flag these cases because I want to suggest they should control the outcome here or are factually similar. In fact, these cases are all quite different from ours in various important ways, not the least of which is that they predate PROMESA's enactment and their focus is on mandatory indemnification. See Colón-Torres, 997 F.3d at 73-74 & n.10 (explaining that no mandatory obligation to indemnify was at issue, but collecting and comparing guaranteed indemnification cases).[18] However, I draw attention to them because this "identity of interest" concept and the policy considerations that animate it are clearly at play in the case now before us. There is no compulsory, absolute

---

[18] "In contrast to Puerto Rico's permissive indemnification policy, the courts that have considered the issue in otherwise similar cases to ours have held that other municipalities' guaranteed indemnification policies were dispositive." Colón-Torres, 997 F.3d at 73 n.10 (citing Deocampo, 836 F.3d at 1144 n.13 (noting that some courts have "ruled that an indemnity obligation triggers . . . 11 U.S.C. §§ 362(a) & 922"); Williams v. Kenney, No. CIV S-07-0100, 2008 WL 3540408, at *8 (E.D. Cal. Aug. 12, 2008) (finding an action is "against the debtor" if a city must "indemnify the employee for the amount of the judgment or settlement" -- even when the city is "no longer a party"); Stockton, 484 B.R. at 376 (reasoning that the city had "undertaken [the individual officials'] defense" and would "be required to pay the judgment," and therefore "the civil action against the individuals 's[ought] to enforce a claim against the debtor' within the meaning of § 922(a)" (quoting 11 U.S.C. § 922(a)(1)))).

indemnification obligation happening here.  But a similar "must pay" dynamic is in the mix because the Commonwealth, under Law 9, has committed to paying defense costs, and Defendants thus have a "right" to something that will be funded straight out of the Commonwealth's treasury.  Practically, cast against the reasoning I've just laid out, that has the same "special circumstance[s]" effect as promising to pay a judgment since it "will affect directly the debtor's assets."  In re N. Star Contracting Corp., 125 B.R. at 370-71.  Following this reasoning to its logical conclusion:  By virtue of the Law 9 benefits Defendants have been conferred, some identity of interest exists between the Commonwealth and Defendants, and that reinforces my determination that the stay applies on the basis of the legal representation benefits alone.

## The Majority and Indemnification

As I've explained, my approach would obviate the need to delve into indemnification as the reason for operation of the automatic stay here.  I simply don't think we need to go there.  But my colleagues did, so I'll say a few words specifically about some snags I perceive in their approach.

For one thing, the majority explains that the difference between Sections 362 and 922 comes down to the target of the action -- Section 362 is against a debtor, but Section 922 stays actions against officers and inhabitants of the debtor.  True.  But that's

not the only difference.  Section 922 applies to claims that arose both pre-petition and post-petition, see 11 U.S.C. § 922(a)(1), whereas Section 362 applies to pre-petition claims only, see id. § 362(a)(1).  The timeline here, see supra n.12, necessitates applicability of Section 922 and Section 922 alone -- regardless of whether the target of the suit is the debtor (directly or, as the majority suggests, indirectly) or officials of the debtor. I'm not convinced it is accurate to say that Section 922's role is about capturing actions brought against officials of the debtor or indirect claims against that debtor since actions directly against the debtor are covered by Section 362.  If the complained-of conduct arose post-petition, as it did here, Section 922's stay is the only option.

For this reason, I'd stay away from Section 362 altogether as providing any basis for today's reasoning.

Ditto Law 9 indemnification.  As I read Law 9, there are separate processes for applying for Law 9 representation versus indemnity -- this is clear on the face of the statute and, as a practical matter, there is a temporal component to it that requires the processes to be totally distinct (necessarily, legal representation would be granted before a maybe-indemnifiable judgment would arise).  Thus, and as we've seen, representation and indemnification do not necessarily go hand-in-hand -- an individual may be entitled to legal representation under Law 9,

but a grant of representation does not mean the individual ultimately will be indemnified. See P.R. Laws Ann. tit. 32, § 3085 (stating that a Commonwealth employee "may request the Commonwealth of Puerto Rico . . . to subsequently assume the payment of any judgment that may be entered against his person"); see also, e.g., Acevedo-Luis, 478 F.3d at 39-40 (approving a lower court's conclusion that "indemnity under Law 9 is neither required nor always available"); Estate of Radamés Tejada v. Flores, 596 F. Supp. 2d 205, 219 (D.P.R. 2009) ("The mere fact that the defendant is represented by Commonwealth counsel does not mean the government will satisfy the verdict under Law 9. Law 9 simply provides the Secretary of Justice discretion to indemnify officials.").

Here, Defendants have so far been granted representation benefits only. By law, see P.R. Laws Ann. tit. 32, § 3085 (explaining that "any judgment that may be entered" might be subject to indemnification), no indemnification has been promised yet, nor might it ever come to pass. There are plenty of variables that could crop up that would lead to a no-indemnity determination by the Secretary on an eventual judgment. Remember, Law 9 warns that it "shall not cover" certain "acts or omissions," like "[w]hen such acts or omissions constitute a crime" or "[w]hen they occur outside the scope of [a defendant's] official functions." Id. § 3088. And "the Commonwealth is not required to pay indemnity when there is a punitive damages award or judgment." Acevedo-

- 35 -

Luis, 478 F.3d at 39. On top of that, the Secretary retains considerable discretion in determining whether indemnification will be covered by the Commonwealth. Recall that the Secretary's letter granting representation made that abundantly clear, warning that any indemnification petition would be subject to the Secretary's evaluation of proven facts, defense attorneys' recommendations, the circumstances of the case, and any evidence or other information the Department of Justice compiles -- all of this will be used to determine entitlement to "the benefit of payment of judgment."

So I disagree with my colleagues when they say "payments for legal representation show that it is far from speculative that the Commonwealth would indemnify the defendants should any judgment be entered against them." As I see it, the processes for obtaining representation versus indemnification are entirely distinct, and an ocean of (at this juncture, unknowable) variables lies between a grant of representation and a grant of indemnification.

I recognize that Defendants are not the first to maintain that Law 9 indemnification "most probably" would result in the wake of an adverse judgment. See, e.g., Colón-Torres, 997 F.3d at 73 (noting the appellant's argument that the Secretary is "generally empower[ed]" to pay for judgments and it will do exactly that in the "vast majority" of cases (cleaned up)). That may well

be. But my preference is not to chain today's outcome to the possibility of future indemnification. It's simply too speculative and unknowable whether indemnification would actually follow.

Now, I agree with my colleagues "that if the Commonwealth had a mandatory (rather than permissive) indemnification policy, the Section 922 automatic stay would apply." But that's not the case. And if legal defense costs had not been conferred pursuant to Law 9, I might feel differently about some of the analysis the majority stakes out because that important factual distinction would require a different approach to this matter. And indeed, that's actually what happened in the cases the majority cites: Without any other concrete draw on a debtor's treasury serving as a claim against the debtor, left with nothing else to which they could anchor the "should a stay apply" analysis, those courts applied the law to the possibility indemnification would ultimately result.[19] We don't need to play that guessing game

---

[19] I'd also point out that the majority, quoting In re Jefferson County, 491 B.R. 277, 289 (Bankr. N.D. Ala. 2013), indicates these courts have said "'absolute indemnity is not required' for the automatic stay to apply." By my reading, though, that's not it. In re Jefferson County said the Section 362(a)(1) stay generally was available only to the debtor, but could be extended to non-bankrupt defendants only if "unusual circumstances" were present. Id. at 284-85, 288, 289; see also A.H. Robins Co., Inc., 788 F.2d at 999. So really, what "courts have clarified" is "that absolute indemnity is not required for the unusual circumstances exception to apply," not, as the majority says, for the stay itself to apply. In re Jefferson Cnty., 491

- 37 -

here, which is why I'd approach the matter as I've laid out.  And, truth be told, even the policies underlying the reasoning in those cases could be read to support my approach -- they rely on the idea that "adverse economic consequences" to a debtor's estate would justify application of the stay.  See, e.g., Robert Plan Corp. v. Liberty Mut. Ins. Co., No. 09-CV-1930, 2010 WL 1193151, at *3 (E.D.N.Y. Mar. 23, 2010).  Hefty legal bills would certainly fit that description.

My final reservation about the majority's tack is its conclusion that the result it reaches "is consistent with other

B.R. at 289.  This triggers the need to discuss what would constitute "unusual circumstances" such that the stay could be extended to apply to this case.  Id. at 284 (explaining that unusual circumstances have been found "(1) when an indemnification or contribution relationship creates an identity of interests between the debtor and the non-debtor defendant; (2) when the proceeding imposes a substantial burden of discovery on the debtor; or (3) when the proceeding would have a potential preclusive effect that forces the debtor to participate in the proceeding as if the debtor were a party").  The current analysis misapplies this non-binding precedent, skipping this step and jumping straight to "the stay therefore applies."  Cf. In re Am. Film Techs., Inc., 175 B.R. 847, 851-55 (Bankr. D. Del. 1994) (cited by the majority for the proposition that a court need not formally determine that a non-debtor defendant is indemnified by the debtor to apply the automatic stay, when the case, as In re Jefferson County described it, 491 B.R. at 289, explains that "a court need not formally determine that a non-debtor defendant is indemnified by the debtor to apply the 'unusual circumstances' exception" (emphasis added)); see also In re Fiddler's Creek, LLC, No. 10-BK-03846, 2010 WL 6618876, at *5 (Bankr. M.D. Fla. Sept. 15, 2010) (same problem as just described).

Indeed, it's the finding of unusual circumstances that would warrant application of the (Section 362(a)(1)) stay.

PROMESA cases in which stays have been granted under Section 922."

In indicating as much, the majority first cites Peaje Investments,

LLC v. FOMB, 899 F.3d 1, 6 & n.2 (1st Cir. 2018), but that case

involved a suit against the Commonwealth debtor itself, and it

also named Commonwealth officers in both official and personal

capacities.  Not quite what we have in this case.  And the majority

also points to our circuit's practice of prudentially staying

appeals in § 1983 cases based on the Commonwealth's petition to

restructure its debt.  To me, prudential stays and automatic stays

are horses of completely different colors, so our circuit's

prudential-stay custom doesn't move the needle for me.

### Wrap-Up

No matter how you slice it, this difficult case forced

a balance of competing considerations and policies.  The result to

Plaintiffs is tinged with some apparent unfairness:  Plaintiffs

carefully and permissibly styled their lawsuit as one that was not

being brought against the Commonwealth or any official-capacity

Defendants, and it was not Plaintiffs' decision to involve the

Commonwealth and its treasury by invoking Law 9.[20]  So yes, at the

---

[20]  I am mindful that my colleagues feel differently about
this, i.e., they suggest Plaintiffs clearly meant to involve the
Commonwealth -- no one has said Defendants could cover $30 million
in requested damages, the majority says, and where else could
"[a]ny hope for meaningful [monetary] recovery" come from?  In my
view, it's premature to consider this in the "should the stay
apply" calculus.  Defendants may well be "good for" a significant
judgment; we simply don't know yet.  Litigation of this case is in

- 39 -

outset of the case, I can see why Plaintiffs would assert that the case "present[ed] no impact on the [Commonwealth's] bankruptcy." But now, with the Commonwealth having committed to paying Law 9 benefits and thereby bringing the matter within the scope of the automatic stay for the many reasons I just explained, quite the opposite is true.[21]

## Conclusion

For these reasons, I **concur** in the judgment, though I'd reach the same result by the above-described route.

---

its infancy (and about to be stayed anyhow), and there is no telling what an actual damages award (if any) would look like. Plaintiffs are entitled to fashion their suit and demand for relief however they like; it doesn't mean they'll be successful.

[21] Plaintiffs, in one last attempt to highlight what they perceive as Law 9's inefficacy, direct our attention to Rivera Carrasquillo v. Bhatia-Gautier, No. 13-cv-1296, slip op. at 12-23 (D.P.R. Feb. 24, 2022) (Besosa, J.), ECF No. 456, which offers a compelling history of Law 9's origin and use, cast against the backdrop of the Commonwealth's high volume of political discrimination cases and its current financial crisis. Add to that the difficult spot all of that puts complainants in when it comes to styling pleadings and seeking (attainable) relief from the courts. But that interesting discussion does not alter my reasoning. Nor, in fact, did it control the district court's decision in Rivera Carrasquillo, which denied a motion to compel settlement payment by individual defendants who enjoyed Law 9 indemnification benefits. See id. at 30; see also id. ("Law 9 is a relic from the past, in need of reform or elimination to serve the current needs of Puerto Rico. The Court is bound, however, by the law. The law in this action requires the Commonwealth of Puerto Rico to pay the settlement amounts."). The district court may very well be correct in its observations. But the law is the law, and the fact remains that Law 9 benefits were conferred in this case.