ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **ELSA AVILÉS COLÓN por sí y en representación de su hijo ANTHONY MALDONADO AVILÉS; GERARDO AVILÉS COLÓN**<br><br>Peticionarios-Demandantes<br><br>v.<br><br>**ESTADO LIBRE ASOCIADO DE PUERTO RICO, representado por la Secretaria de Justicia, DENNISE LONGO QUIÑONES; HENRY ESCALERA RIVERA en su capacidad personal y oficial como comisionado del NPPR; SAÚL PÉREZ PABÓN en su capacidad personal y oficial; Sargento JORGE FONTAINE RIVERA en su capacidad personal y oficial; JOHN DOE, supervisor de los policías en su capacidad personal y oficial; las Sociedades Legales de Gananciales compuestas por cada uno de los demandados y sus cónyuges A a la D; Aseguradoras X, Y, Z**<br><br>Recurridos-Demandados | KLCE202301314<br><br><br>consolidado con | **CERTIORARI**<br>Tribunal de Primera Instancia, Sala Superior de **Utuado**<br><br><br>Civil Núm.:<br>**JA2020CV00010**<br><br><br>Sobre:<br>Daños y Perjuicios; Violación de Derechos Civiles y Constitucionales al amparo de la 42 USC Sec. 1983 |
| **ESTADO LIBRE ASOCIADO DE PUERTO RICO, representado por la Secretaria de Justicia, DENNISE LONGO QUIÑONES; HENRY ESCALERA RIVERA en su capacidad personal y oficial como comisionado del NPPR; SAÚL PÉREZ PABÓN en su capacidad personal y oficial; Sargento JORGE FONTAINE RIVERA en su capacidad personal oficial; JOHN DOE, supervisor de los policías en su capacidad personal y oficial; las Sociedades Legales de Gananciales compuestas por cada uno de los demandados** | KLCE202301325 | |

Número Identificador
RES2024 _____

| **y sus cónyuges A a la D: Aseguradoras X, Y, Z**<br><br>Apelante | | |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico, a 19 de agosto de 2024.

El 27 de noviembre de 2023, mediante el recurso KLCE202301314, comparecieron ante nos el señor Gerardo Avilés Colón (señor Avilés Colón) y la señora Elsa Avilés Colón (señora Avilés Colón) por sí y en representación de su hijo, el señor Anthony Maldonado Avilés (señor Maldonado Avilés) (en conjunto, hermanos Avilés Colón) en solicitud de que revoquemos parcialmente una *Resolución* emitida el 23 de octubre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Utuado (TPI o Foro Primario).[1] Por virtud del aludido dictamen, el TPI resolvió que procedía continuar este caso únicamente en contra del Estado Libre Asociado de Puerto Rico (ELA) y los demás codemandados en su carácter personal y oficial, con excepción del entonces Comisionado del Negociado de la Policía de Puerto Rico (NPPR), el señor Henry Escalera Rivera (comisionado Escalera Rivera) en su capacidad personal. El Foro Primario dictaminó que los procesos no podían continuar en contra del comisionado Escalera Rivera en su capacidad personal por el riesgo que tendría sobre que el ELA pagara en exceso del límite monetario dispuesto por la *Ley de*

---

[1] Apéndice del recurso de *Certiorari*, Anejo XLIV, págs. 611-614. Archivada y notificada el 25 de octubre de 2023.

*Reclamaciones y Demandas contra el Estado*, Ley Núm. 104 del 29 de junio de 1955 (Ley de Pleitos contra el Estado), según enmendada, 32 LPRA secs. 3077 *et seq.*, ante la eventualidad de recaer una sentencia en su contra.

En igual fecha, por virtud del recurso KLCE202301325, compareció ante nos el ELA, representado por la Oficina del Procurador General de Puerto Rico, en petición de que revoquemos parcialmente una *Resolución* emitida el 25 de abril de 2023 por el TPI.[2] Específicamente, solicitó revocar la porción del dictamen que permitió la continuación de los procedimientos en contra del ELA. Asimismo, peticionó ordenar el archivo administrativo del caso hasta que el Tribunal Federal de Distrito para el Distrito de Puerto Rico (Tribunal Federal de Distrito) disponga lo contrario en la petición de reestructuración de la deuda del ELA al amparo de la *Puerto Rico Oversight, Management, and Economic Stability Act* (PROMESA), 48 USCA, secs. 2101 *et seq.*

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* solicitado por los hermanos Avilés Colón y se revoca parcialmente la *Resolución* emitida el 23 de octubre de 2023, a los fines de que se restablezca la causa de acción contra el comisionado Escalera Rivera en su carácter personal. Por otro lado, se deniega la expedición del auto de *certiorari* solicitado por el ELA.

Veamos el trasfondo fáctico y procesal atinente a este recurso.

**I.**

El caso de marras se originó el 15 de febrero de 2020, fecha en que los hermanos Avilés Colón incoaron una *Demanda* en contra del ELA, el comisionado Escalera Rivera, en su capacidad personal y oficial; el oficial Saúl Pérez Pabón (oficial Pérez Pabón), en su capacidad personal y oficial; el sargento Jorge Fontaine Rivera

---

[2] *Íd.*, Anejo XXV, págs. 540-544. Archivada y notificada el 25 de abril de 2023.

(sargento Fontaine Rivera), en su capacidad personal y oficial, entre otros codemandados, por daños y perjuicios y violación de derechos civiles.[3] En síntesis, arguyeron que bajo la dirección, orden y/o conocimiento del señor Escalera Rivera, el oficial Pérez Pabón y el sargento Fontaine Rivera utilizaron fuerza mortal y excesiva en contra de los hermanos Avilés Colón y el señor Maldonado Avilés, quien resultó ser asesinado por un disparo en la espalda mientras se encontraba en la marquesina de su hogar en Jayuya, Puerto Rico. A saber, alegaron que el 17 de febrero de 2019, el señor Maldonado Avilés, quien era paciente de epilepsia, presentaba síntomas de un ataque epiléptico y descompensación emocional. Adujo que cuando la señora Avilés Colón no logró calmarlo, le indicó al señor Maldonado Avilés que llamaría al NPPR para ayudarlo a controlar su estado emocional y llevarlo al hospital. Indicaron que cuando los agentes del NPPR llegaron al hogar de la señora Avilés Colón, el señor Avilés Colón se encontraba con el señor Maldonado Avilés, quien tenía un machete que se le cayó al suelo, ya que comenzó a sufrir un episodio epiléptico. Particularizaron que cuando el señor Maldonado Avilés cayó al suelo por el episodio epiléptico, un agente del NPPR que conocía sobre su condición de salud, le disparó en la espalda. Alegaron que otros agentes dispararon fallidamente contra los hermanos Avilés Colón. Puntualizaron que el señor Maldonado Avilés caminó agonizando hasta la patrulla en la calle, donde se desplomó y falleció. Esgrimieron que el señor Héctor Garrido fotografió la escena previo a que el sargento Fontaine Rivera la alterara al entrar a la marquesina, recoger el machete del suelo y colocarlo en la rueda delantera izquierda de la patrulla, junto al cadáver del señor Maldonado Avilés. Especificaron que un vecino fotografió al sargento Fontaine Rivera cuando movió el machete. Por

---

[3] *Íd.*, Anejo I, págs. 1-17.

lo anterior, solicitaron condenar a los codemandados solidariamente al pago de los daños sufridos por las actuaciones culposas y negligentes del NPPR y sus empleados, en claro menosprecio de sus vidas, integridad física, dignidad y derechos constitucionales. Además, reclamaron una indemnización no menor de $5,000,000.00 por daños emocionales, así como daños punitivos al amparo de la Ley de Derechos Civiles, 42 USC sec. 1983 *et seq.* A su vez, el señor Avilés Colón solicitó una suma no menor de $1,000,000.00, mientras que la señora Avilés Colón peticionó $1,000,000.00 por los daños, sufrimientos y las angustias mentales sufridas por su hijo antes de morir.

El 26 de agosto de 2020, el comisionado Escalera Rivera presentó una *Moción de Desestimación,* en la que sostuvo que no surgía de la *Demanda* una causa de acción que justificara la concesión de un remedio en su carácter personal por la doctrina de inmunidad condicional de un funcionario público, por lo cual solicitó del TPI la desestimación a su favor.[4]

Luego de evaluar el asunto ante su consideración, el 4 de marzo de 2021, el TPI emitió y notificó una *Sentencia Parcial,* en la que desestimó la causa de acción en el carácter personal del comisionado Escalera Rivera.[5] Esto, al concebir que las actuaciones u omisiones negligentes que se le imputaron estaban estrechamente relacionadas con su carácter oficial.

Inconforme, los hermanos Avilés Colón acudieron ante esta Curia Apelativa. El 22 de junio de 2021, un Panel Hermano de este Tribunal emitió una *Sentencia,* en la que se revocó la *Sentencia Parcial.*[6] En lo pertinente, se resolvió que el *Agreement for the Sustainable Reform of the Puerto Rico Police Department* del

---

[4] Apéndice del recurso de la *Petición de Certiorari*, Anejo IX, págs. 40-46.
[5] *Íd.*, Anejo XVII, págs. 117-120.
[6] *Íd.*, Anejo XXII, págs. 134-159.

Departamento de Justicia de los Estados Unidos, suscrito el 17 de julio de 2013, alertó al comisionado Escalera Rivera sobre que podía exponerse a responsabilidad personal por las actuaciones *so color* de autoridad del oficial Pérez Pabón y del sargento Fontaine Rivera, ante la violación de derechos constitucionales del señor Maldonado Avilés.

Tras varios trámites procesales, el ELA y el NPPR presentaron un *Aviso de injunction paralizando la litigación del presente caso y sobre el requisito de presentar una solicitud de gastos administrativos ante el Tribunal de Título III.*[7] En esta, informaron que, a tenor con el *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (*Confirmation Order*), emitido el 18 de enero de 2022 por el Tribunal Federal de Distrito en el caso *In re: Commonwealth of Puerto Rico*, Case No. 17BK3283-LTS, existía un *injunction* permanente en todos los casos presentados previo al 15 de marzo de 2022. Además, que el Tribunal Federal de Distrito dictó una *Orden* para que las reclamaciones de todas las entidades o cualquier deuda o responsabilidad, que se haya tenido o que se pueda tener, sean descargadas o liberadas de conformidad con el Plan de Ajuste de la Deuda del ELA. Adujeron que dentro de noventa (90) días de la fecha de efectividad del Plan de Ajuste de la Deuda, se requería presentar evidencia de reclamaciones de gastos administrativos. Expusieron que la Junta de Supervisión Fiscal presentó ante el Tribunal Federal de Distrito un *Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Plan of Adjustment of the Commonwealth of Puerto Rico, et al. Pursuant to Title III Of PROMESA and (B) Occurrence of the*

---

[7] *Íd.*, Anejo IV, págs. 33-45.

*Effective Date*, en el que notificó que la fecha límite para presentar una solicitud de pago por reclamaciones de gastos administrativos era el 13 de junio de 2022 y que a partir de dicha fecha se está vedado permanentemente de reclamar el pago en contra del ELA. Apuntaron que de recaer una sentencia en contra del ELA y del NPPR, los fondos pagados a los hermanos Avilés Colón constituirían un *liability claim* en contra del ELA y sus instrumentalidades, por lo que sostuvieron que el TPI carecía de jurisdicción para continuar con este caso, puesto que procedía la paralización del mismo hasta que el Tribunal Federal de Distrito autorizara su continuación. No obstante, arguyeron que los hermanos Avilés Colón no quedarían desprovistos de un remedio de cualificar como una reclamación de gastos administrativos.

En oposición, los hermanos Avilés Colón plantearon que este caso contra funcionarios en su capacidad personal por violaciones de derechos civiles no debía paralizarse por PROMESA, *supra*.[8] Esto, toda vez que el ELA no figuraba como único demandado por incluir a algunos empleados del NPPR en su capacidad personal, quienes no estaban cobijados por la quiebra. Por otro lado, manifestaron que los hechos de este caso ocurrieron posterior a presentarse la quiebra. Expresaron que la paralización era inconstitucional, en vista de que privaba a los ciudadanos de su derecho a acudir a los tribunales y reclamar reparaciones de agravios. A su vez, adujeron que PROMESA, *supra*, violaba la Cláusula de Uniformidad de la Constitución de Estados Unidos, Sec. 8, Art. I, Const. EE. UU. Por ello, solicitaron que se declarara No Ha Lugar a la petición de paralización por PROMESA, *supra*.

En respuesta, el 5 de mayo de 2022, el ELA replicó a la oposición de la paralización del pleito por PROMESA, *supra*.[9] Precisó

---

[8] *Íd.*, Anejo VI, págs. 46-53.
[9] *Íd.*, Anejo VIII, págs. 55-63.

que este caso se trata de una reclamación contra el caudal del ELA, posterior a la petición de quiebra, pero previo a la fecha de efectividad del Plan de Ajuste de la Deuda. Por lo anterior, reiteró que era aplicable el *injunction* emitido por el Tribunal Federal de Distrito, el cual tuvo el efecto de paralizar el caso, privar de jurisdicción al TPI y conceder el remedio de la reclamación de gastos administrativos.

El 2 de junio de 2022, los hermanos Avilés Colón presentaron un *Escrito suplementario en oposición a paralización.*[10] En esta, solicitaron tomar conocimiento judicial de una publicación periodística del Lcdo. Rolando Emmanuelli del 29 de mayo de 2022, en el que explicó que la presentación de un proceso de quiebra no implicaba que no se pudiera demandar al Estado por reclamaciones de violación de derechos civiles. En tal sentido, puntualizaron que este caso no se podía tratar como una reclamación de gastos administrativos, ya que la paralización automática de pleitos radicados antes de la quiebra no era extensiva a todo tipo de caso.

Sometido el asunto ante su consideración, el 16 de junio de 2022, el Foro Primario emitió una *Resolución,* en la que ordenó la paralización de los procedimientos contra el ELA y decretó el archivo administrativo en cuanto a este codemandado.[11] El TPI fundamentó su determinación en el *injunction* del Tribunal Federal de Distrito y en que la cláusula de supremacía de la Constitución de los Estados Unidos, Art. VI, Const. EE. UU., obligaba a aplicar PROMESA, sin excepción alguna.

El 1 de julio de 2022, el comisionado Escalera Rivera presentó una *Comparecencia especial en solicitud de reconsideración a la resolución sobre la continuación de los procedimientos sobre los funcionarios en su carácter personal a tenor con el "aviso de*

---

[10] *Íd.*, Anejo X, págs. 65-67.
[11] *Íd.*, Anejo XI, págs. 68-76. Archivada y notificada el 21 de junio de 2022.

*injunction paralizando la litigación del presente caso y sobre el requisito de presentar una solicitud de gastos administrativos ante el Tribunal de Título III["], presentado por el ELA.*[12] Por medio de esta, solicitó que la paralización se hiciera extensiva a los funcionarios en su carácter personal, principalmente al comisionado Escalera Rivera. Esto, puesto que el ELA era parte indispensable y que, al desestimar el pleito en contra del ELA, existía falta de parte indispensable para adjudicar en sus méritos la reclamación. Concibió que no se podían bifurcar las alegaciones y las causas de acción sin lesionar las defensas y los derechos del ELA. Asimismo, que, ante la falta de una parte indispensable, los intereses de los funcionarios, así como del ELA, se lesionarían, faltando a su debido proceso de ley.

El 6 de julio de 2022, los hermanos Avilés Colón presentaron una *Moción de Reconsideración y Oposición a Reconsideración presentada por Henry Escalera.*[13] En lo pertinente, sostuvieron que como los hechos de este caso ocurrieron en el 2019, la *Demanda* estaba exenta de la aplicación del *injunction.* Además, manifestaron que el *Confirmation Order* no indicaba expresamente que las reclamaciones judiciales presentadas en contra del ELA en concepto de violación a los derechos civiles por hechos ocurridos luego de la petición de quiebra y que se presentaron luego de dicha radicación, debían ser paralizadas. Adujeron que, incluso, el *Confirmation Order* contiene ciertas salvaguardas para proteger la salud y seguridad de las personas basados en estatutos federales como Ley de Derechos Civiles, *supra.* Se sustentaron en lo siguiente:

> (e) United States Limitation.
> "Notwithstanding anything contained herein or in the Plan to the contrary, no provision shall (i) impair the United States, its agencies, departments, or agents, or in any matter relieve the Debtors or the Reorganized Debtors, as the case may be, from compliance with

---

[12] *Íd.*, Anejo XII, págs. 77-92.
[13] *Íd.*, Anejo XIII, págs. 93-122.

> federal laws or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory[.]"

Asimismo, los hermanos Avilés Colón esgrimieron que afirmar que el *Confirmation Orden* suspende los derechos civiles y constitucionales por meros gastos administrativos o por la paralización del reclamo de dichos derechos, era una interpretación acomodaticia del ELA.

El 14 de julio de 2022, el TPI emitió una *Sentencia de Paralización.*[14] En esta, el Foro Primario reconsideró la *Resolución* emitida el 16 de junio de 2022 y ordenó la paralización de los procedimientos en contra del ELA y los funcionarios demandados en su carácter personal, incluyendo al comisionado Escalera Rivera. Por ello, decretó el archivo del caso en su totalidad. No obstante, se reservó la jurisdicción expresamente para ordenar la reapertura del caso a solicitud de parte y sujeto a lo que disponga el Tribunal Federal de Distrito u otro Tribunal Federal de Apelaciones.

Luego de varios trámites procesales, el 30 de enero de 2023, los hermanos Avilés Colón presentaron una *Moción Solicitando se Levante la Paralización.*[15] Adujeron que los abogados de la Junta de Control Fiscal, al igual que la Corte de Quiebras, aclararon y dejaron fuera del *injunction* todas las reclamaciones presentadas en contra del ELA luego de la radicación de la quiebra, que se hubiesen radicado al amparo de la Ley de Pleitos contra el Estado*, supra*, y donde se les hubiese aplicado el límite estatutario para las indemnizaciones al amparo de esta Ley. Esto, basado en lo siguiente:

> **8. If you are a party to a litigation, proceeding, or action asserting a claim pursuant to 32 L.P.R.A. Sec.3077(a), to the extent the amount of such claim asserted is within such statutory limitation of $75,000.00 or $150,000.00, as applicable, the**

---

[14] *Íd.*, Anejo XIV, págs. 123-124. Archivada y notificada el 15 de julio de 2022.
[15] *Íd.*, Anejo XIX, págs. 129-528.

**injunctions in Section 92.3 of the Plan and decretal paragraph 59 of the Confirmation Order have b[e]en modified to allow such litigation to proceed to final judgment and execution, including any appeals. (Énfasis nuestro).**

Además, argumentaron que, a tenor con el *Confirmation Order* y el Plan de Ajuste de la Deuda, las causas de acción presentadas bajo la Ley de Derechos Civiles, *supra*, catalogadas como acciones de negligencia crasa o *willful misconduct* quedaron exentas del alcance del *injunction* del *Confirmation Order* para los casos *post-petition*, pero que fueron presentadas previo a la aprobación del Plan de Ajuste de la Deuda. En atención a lo anterior, solicitaron que el Foro Primario levantara la paralización y continuaran los procedimientos.

Por su parte, el 27 de febrero de 2023, el ELA presentó una *Comparecencia Especial en Cumplimiento de Orden y en Oposición a Moción Solicitando se Levante la Paralización*.[16] Sostuvo que la *Sentencia de Paralización* del 14 de julio de 2022 fue la ley del caso, ya que no fue apelada por los hermanos Avilés Colón, por lo que advino final, firme e inapelable. Por otro lado, alegó que no existía algún cambio en el estado de derecho con relación a la paralización.

El 24 de marzo de 2023, los hermanos Avilés Colón presentaron una *Réplica (Por Orden del Tribunal)*.[17] En esta, entre otras cosas, plantearon que la *Sentencia de Paralización* del 14 de julio de 2022 no era final ni firme, ya que el TPI se reservó la jurisdicción para reabrir el caso, sujeto a lo que resolviera la Corte de Quiebras.

El 25 de abril de 2023, el Foro Primario emitió una *Resolución*, notificada y archivada en igual fecha.[18] En esta, el TPI reabrió el caso y ordenó la continuación de los procedimientos en contra de

---

[16] *Íd.*, Anejo XXI, págs. 529-532.
[17] *Íd.*, Anejo XXIII, págs. 534-538.
[18] *Íd.*, Anejo XXV, págs. 540-544.

todos los codemandados. El Foro Primario consignó que no surgió de la oposición del ELA que se haya controvertido la contención de los hermanos Avilés Colón de que, con posterioridad a la paralización del caso, los abogados de la Junta de Control Fiscal y la Corte de Quiebras aclararon y dejaron fuera del *injunction* todas las reclamaciones contra el ELA *post-petition* que se hayan radicado por virtud de la Ley de Pleitos contra el Estado, *supra*, y se les aplique el límite estatutario previsto para las indemnizaciones bajo esta Ley. El TPI determinó que existió un cambio, no controvertido por el ELA, con relación a la extensión de la aplicabilidad del *injunction* comprendido en el *Confirmation Order*, así permitiendo la continuación de las acciones bajo la Ley de Pleitos contra el Estado, *supra*, la ejecución que pueda recaer. El TPI expresó que, bajo el *Confirmation Order* y el Plan de Ajuste de la Deuda, las causas de acción al amparo de la Ley de Derechos Civiles, *supra*, catalogadas como acciones de negligencia crasa o *willful misconduct* y que son *post-petition*, pero que se presentaron antes de la aprobación del Plan de Ajuste de la Deuda, quedaron exentas del alcance del *injunction*. También resolvió que el *injunction* suplementario comprendido en el inciso 65 del *Confirmation Order* tampoco aplica.[19]

El 10 de mayo de 2023, el ELA y el comisionado Escalera Rivera, en su capacidad personal, presentaron una *Comparecencia Especial en Solicitud de Reconsideración*.[20] Por medio de esta, arguyeron que no procedía levantar la paralización bajo el *injunction on claims* del inciso 59 por tres (3) razones principales. A saber, que (1) la modificación del *Confirmation Order* no aplicaba al caso de epígrafe; (2) la sección 1.421 del Plan de Ajuste de la Deuda,[21]

---

[19] *Íd.*, Anejo XIX, págs. 216-217.
[20] *Íd.*, Anejo XXVI, págs. 545-560.
[21] *Íd.*, Anejo XIX, pág. 311.

exceptuando del *injunction* los casos donde se alegara negligencia crasa, conducta intencional y fraude intencional, no procedía porque aplicaba a reclamaciones contractuales y/o agravios contractuales de deudores, a tenor con el caso *Osuji v. Departamento de la Familia,* Civil No. 20-1545 (D.P.R. 2023) del Tribunal Federal de Distrito, y (3) el *injunction* suplementario que establecía el inciso 65 del *Confirmation Order* no aplica a los funcionarios en su carácter personal, pues, según arguyeron, la naturaleza de la reclamación estaba excluida de la definición de *released claims* del Plan de Ajuste de la Deuda. En lo concerniente a la Sección 1.421 del Plan de Ajuste de la Deuda, plantearon que los hermanos Avilés Colón no eran deudores, deudores organizados ni agentes de desembolso de pago de deuda, más que la cuantía reclamada no era una suma líquida ni nacía de un contrato, sino de una acción por daños y perjuicios. Respecto a la modificación del *Confirmation Order,* sostuvieron que aplicaba únicamente para permitir el litigio contra el ELA a tenor con la Ley de Pleitos contra el Estado*, supra,* en la medida en que la cantidad reclamada estuviese dentro de los límites estatutarios de $75,000.00 o $150,000.00. Sostuvieron que como la reclamación de este caso es por $7,000,000.00, las reclamaciones en contra del ELA y al amparo de la Ley de Pleitos contra el Estado*, supra,* continuaban paralizadas. Por último, reiteraron que la paralización debe ser aplicable a todas las partes, incluyendo a los funcionarios en su capacidad personal, toda vez que el ELA constituía una parte indispensable. En apoyo a su contención, arguyó que las alegaciones de este caso surgen por el desempeño de dichos funcionarios en su carácter oficial, por lo que no se podían separar las causas de acción que están intrínsecamente relacionadas.

El 19 de mayo de 2023, los hermanos Avilés Colón presentaron una *Oposición a Comparecencia Especial en Solicitud de*

*Reconsideración.*[22] En su virtud, sostuvieron que la cuantía reclamada en la *Demanda* excedía el límite estatutario de la Ley de Pleitos contra el Estado*, supra*, ya que no sólo incluía la partida de límite estatutario que sufragaría el ELA, sino que también los daños que se reclamaron contra los funcionarios en su capacidad personal. Por otro lado, arguyeron que los abogados de la Junta de Control Fiscal, que representan al ELA, así como la Corte de Quiebras, aclararon y dejaron fuera del *injunction* todas las reclamaciones *post-petition* contra el ELA que se radicaron al amparo de la Ley de Pleitos contra el Estado*, supra*, y en el que se les aplicó el límite estatutario para las indemnizaciones bajo esta Ley. Por otro lado, reiteraron que la Sección 1.421 del Plan de Ajuste de la Deuda era aplicable al caso, pues dicha disposición concierne tanto las reclamaciones contractuales como las extracontractuales, citando que la aludida Sección dispone lo siguiente:

> [...] "Released Claims" is not intended to include, nor shall it have the effect of including, Claims or Causes of Action unrelated to the Debtors or Claims or Causes of Action for gross negligence, willful misconduct or intentional fraud asserted, or that could have been asserted, **whether sounding in contract or tort**[.] (Énfasis nuestro).

En lo concerniente al caso federal *Osuji v. Departamento de la Familia, supra,* los hermanos Avilés Colón expusieron que, con respecto a una causa de acción contra funcionarios en su capacidad personal al amparo de la Ley de Derechos Civiles, *supra*, el Tribunal Federal de Distrito estableció que "Though Plaintiffs' claims against the PRDF are permanently enjoined pursuant to the Plan, Defendants provide no explanation as to how the Title III Plan bars individual capacity suits. Thus, Plaintiffs' claim against the Individual Defendants in their individual capacities may proceed.

---

[22] Apéndice del recurso de *Certiorari,* Anejo XXVII, págs. 561-566.

[...] Plaintiffs may continue to pursue their claims against the Individual Defendants in their individual capacities."

Por último, en lo atinente a la alegación de que debe continuar la paralización del caso puesto que el ELA era parte indispensable, los hermanos Avilés Colón arguyeron que no tiene apoyo en nuestro ordenamiento jurídico. Persuasivamente, manifestaron que cuando se presenta una reclamación por violación de derechos civiles a nivel federal, la acción se dirige personalmente contra los funcionarios, ya que el ELA goza de inmunidad soberana de la Enmienda XI de la Constitución de Estados Unidos.

El 12 de junio de 2023, el ELA y el comisionado Escalera Rivera presentaron una *Comparecencia Especial en Réplica a Oposición a Solicitud de Reconsideración*[23] donde alegaron, en lo pertinente que, la *Opinion and Order* de *Osuji v. Departamento de la Familia, supra,* es persuasiva.[24] Arguyeron que en aquel caso, la disposición de *injunction* respecto a *released claims* no les aplicaba a hermanos Avilés Colón porque no era deudores, deudores reorganizados o agentes de desembolso con una reclamación en contra de un *released party*. Sostuvieron que, ante ello, el Tribunal Federal de Distrito resolvió que la excepción de reclamaciones sobre negligencia crasa, *willful misconduct* o fraude intencional era irrelevante al pleito. Aseveraron que, si bien los hermanos Avilés Colón alegaron que el caso de *Osuji v. Departamento de la Familia, supra,* no obliga al TPI, el Tribunal Federal de Distrito interpretó la aplicación de la Sección 1.421 en una circunstancia similar.

Por su parte, el 3 de julio de 2023, hermanos Avilés Colón presentaron una *Dúplica en Oposición a Solicitud de Reconsideración.*[25]

---

[23] *Íd.*, Anejo XXXII, págs. 572-581.
[24] Apéndice del recurso de *Petición de Certiorari*, Anejo L, págs. 722-731.
[25] Apéndice del recurso de *Certiorari*, Anejo XXXIV, págs. 583-589.

El 11 de agosto de 2023, el TPI emitió y notificó una *Orden*,[26] en la que le cuestionó al ELA y a los funcionarios demandados las siguientes preguntas:

1. Si la acción contra el ELA en este caso, según expuesto por la parte demandante, se limita a los topes estatutarios de la Ley de Pleitos [c]ontra el Estado[*supra*], ¿por qué no se debe aplicar la Modificación del "*Confirmation Order*" sobre los límites de la cuantía para que la reclamación contra el ELA quede exenta de la aplicación del *Injunction*?
2. ¿Por qué el Tribunal debe entender que la reclamación de $7,000,000.00 aplica al ELA por encima del límite dispuesto en la Ley de Pleitos Contra el Estado, cuando la propia parte demandante ha reconocido que su acción en contra del ELA se rige por los confines dispuestos por la Ley de Pleitos Contra el Estado y que el exceso es en contra de los demandados en su carácter personal?
3. ¿Por qué este Tribunal debe entender que cuando la modificación del "*Confirmation Order*" dice "*claims*" o "*claim*" ello debe ser sinónimo de la acción y remedio global solicitado contra todas las partes del pleito y no solamente contra el ELA que es a quien le aplica el tope de la Ley de Pleitos Contra el Estado?

El 7 de septiembre de 2023, el ELA y el comisionado Escalera Rivera presentaron una *Comparecencia Especial en Cumplimiento de Orden y Reiterando Moción de Reconsideración*.[27] En torno a la primera pregunta, respondieron que la modificación del *Confirmation Order* es aplicable sólo a los casos que la reclamación presentada esté dentro de los límites estatutarios de $75,000.00 o de $150,000.00, pero en este caso se sobrepasa dicho monto, por reclamarse $7,000,000.00 por las alegadas actuaciones negligentes y/o culposas del NPPR y de sus funcionarios. Con respecto a la segunda pregunta, entre otras cosas, plantearon que los hermanos Avilés Colón alegaron una cuantía global por los daños ocasionados, a ser pagada solidariamente y que excedía el límite estatutario de $150,000.00. Por otro lado, adujeron que el comisionado Escalera Rivera estaba siendo representado por el ELA, por lo que la cuantía que se le adjudique en su capacidad personal podía recaer sobre el

---

[26] *Íd.*, Anejo XXXVI, págs. 591-593.
[27] *Íd.*, Anejo XXXIX, págs. 597-604.

ELA. A su vez, alegaron que en *González Pérez v. ELA*, 138 DPR 408 (1995), el Tribunal Supremo resolvió que era improcedente imponer una obligación solidaria al ELA en exceso a los límites estatutarios. Asimismo, afirmaron que en *García v. ELA*, 146 DPR 725 (1998), el Tribunal Supremo determinó que únicamente se podía imponer responsabilidad solidaria al Estado hasta el máximo permitido por la Ley de Pleitos contra el Estado*, supra*, y el monto restante se le debía imponer exclusivamente a los cocausantes del daño cuando su actuación no estaba enmarcada dentro de una relación de agencia o empleo con el Estado. Particularizaron que, en este caso, las alegadas actuaciones culposas y/o negligentes de los funcionarios demandados en su capacidad personal estaban enmarcadas dentro de una relación de agencia o empleo con el Estado. Igualmente, distinguieron que en *García v. ELA, supra*, se permitió cobrar el exceso de la indemnización a los funcionarios demandados en su capacidad personal porque sus actuaciones constituyeron un delito. Además, destacaron que la aceptación de los hermanos Avilés Colón sobre que el ELA respondería por los límites estatutarios, no resolvería que el Estado era quien único podría pagar una indemnización millonaria de recaer una sentencia adversa. Por último, en lo concerniente a la tercera pregunta, expresaron que, en esta reclamación, donde presuntamente aplica el *injunction* del Plan de Ajuste de la Deuda, se debía interpretar a base de la partida global establecida y no lo que pudiera entenderse lo que corresponde a cada parte. Citaron persuasivamente el caso *Víctor J. Salgado & Associates, Inc. v. Cestero-Lopategui*, 34 F. 4th 49 (1st Cir. 2022), en el que arguyeron que en el contexto de la aplicación de la paralización automática del Título III de PROMESA cuando se demandó a funcionarios públicos en carácter personal por $30,000,000.00, el Tribunal de Primer Circuito federal reconoció que cuando un demandante solicita una indemnización millonaria

en contra de funcionarios en su carácter personal por actos antijurídicos cometidos en el ejercicio de sus funciones y están siendo representados por el Departamento de Justicia, el verdadero objetivo es cobrar una potencial sentencia adversa al bolsillo del Estado. Esto, puesto que el funcionario público carece de capacidad económica para pagar una indemnización millonaria y el Estado tendría que pagarlos.

El 29 de septiembre de 2023, los hermanos Avilés Colón presentaron una *Moción en Cumplimiento de Orden*[28] en que arguyeron que las alegaciones de solidaridad en su reclamación estaban dirigidas a los funcionarios en su capacidad oficial. Además, que existía la responsabilidad vicaria del ELA como patrono de los oficiales del orden público. Reiteraron que la determinación de solidaridad que pueda hacer en su día el TPI estaba sujeta a la relación patrono-empleado de los codemandados en su capacidad oficial, siempre observando los límites estatutarios. Con respecto al caso citado del Tribunal de Primer Circuito federal, *Víctor J. Salgado & Associates, Inc. v. Cestero-Lopategui, supra*, los hermanos Avilés Colón esgrimieron que se resolvió basado en el *automatic stay* del Código de Quiebras federal, 11 USC sec. 362, incorporada en PROMESA, *supra*, no a base del *Confirmation Order* y del *injunction* emitido en el litigio del Título III de PROMESA. En la alternativa, expresaron que del TPI entender que se debía paralizar el pleito en contra del comisionado Escalera Rivera en su capacidad personal, nada impide que se continúen los procedimientos.

Sometido el asunto ante su consideración, el 23 de octubre de 2023, el TPI emitió una *Resolución.*[29] Mediante esta, el Foro Primario consignó que no entrevía razón por la cual la acción contra el ELA y los demás codemandados en su capacidad oficial, limitada a los

---

[28] *Íd.*, Anejo XLI, págs. 606-608.
[29] *Íd.*, Anejo XLIV, págs. 611-614. Archivada y notificada el 25 de octubre de 2023.

topes estatutarios de la Ley de Pleitos contra el Estado, *supra,* no deba continuar basado en la modificación del *Confirmation Order.* No obstante, al TPI le pareció que, en vista de que el comisionado Escalera Rivera en su carácter personal era beneficiario de la representación legal del Estado, el ELA podría terminar resarciendo la responsabilidad de éste en su capacidad personal, en la eventualidad de recaer una sentencia en su contra. Por ello, le preocupó que existiera un riesgo de que el ELA tenga que pagar por encima del límite estatutario de la Ley de Pleitos contra el Estado, *supra,* si se permitía la continuación de los procesos en contra del comisionado Escalera Rivera en su capacidad personal. Esto, porque el ELA le alegó y representó al TPI que se haría cargo del pago de la sentencia que recaiga en contra del comisionado Escalera Rivera. Al Foro Primario le pareció persuasivo el análisis del ELA en lo resuelto por el Tribunal de Primer Circuito federal de que solicitar una indemnización millonaria en contra de los funcionarios en su carácter personal que están siendo representados por el Departamento de Justicia, el verdadero objetivo es cobrar una potencial sentencia adversa al bolsillo del Estado. Por ello, reconsideró la *Resolución* emitida el 25 de abril de 2023. Consecuentemente, resolvió que procedía continuar este pleito únicamente en contra del ELA y de los demás codemandados en su carácter personal y oficial, con excepción del comisionado Escalera Rivera en su capacidad personal.

Inconforme con tal determinación, el 27 de noviembre de 2023, los hermanos Avilés Colón presentaron un recurso de *certiorari,* en el que le atribuyeron al TPI la comisión el siguiente error:

> **ERRÓ EL TPI AL RECONSIDERAR SU RESOLUCIÓN DE 25 DE ABRIL DE 2023 Y PARALIZAR LA DEMANDA EXCLUSIVAMENTE CONTRA HENRY ESCALERA EN SU CAPACIDAD PERSONAL EN VIRTUD DE LA QUIEBRA DEL ELA BAJO PROMESA.**

En igual fecha, inconforme con la *Resolución* emitida el 25 de abril de 2023, el ELA presentó ante esta Curia su propio recurso de *Petición de Certiorari* por el cual le atribuyó al TPI la comisión un (1) solo error:

> **EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL NEGARSE A ACATAR UNA ORDEN INTERDICTAL EMITIDA EL 18 DE ENERO DE 2022 POR LA SALA DE TÍTULO III -SEGÚN MODIFICADA EL 20 DE OCTUBRE DE 2023- Y AL CONTINUAR CON LOS PROCEDIMIENTOS DEL CASO, A PESAR DE QUE CARECE TOTALMENTE DE JURISDICCIÓN PARA HACERLO.**

El 5 de diciembre de 2023, en el recurso KLCE202301314, emitimos una *Resolución* en la que le concedimos al ELA hasta el 8 de diciembre de 2023 para expresarse en torno a la expedición del recurso presentado por los hermanos Avilés Colón. En igual fecha, en el recurso KLCE202301325, le concedimos el mismo término a los hermanos Avilés Colón para que se expresaran en torno a los méritos del recurso incoado por el ELA.

El 7 de diciembre de 2023, el comisionado Escalera Rivera presentó una *Solicitud de consolidación y término adicional.* Mediante esta, solicitó la consolidación de ambos recursos para promover la uniformidad en las determinaciones de este Tribunal en beneficio de la economía procesal, toda vez que la controversia suscitada entre las partes comprendía cuestiones comunes de hechos y de derecho. Además, solicitó un término adicional para cumplir con lo ordenado por esta Curia apelativa.

El 13 de diciembre de 2023, emitimos una *Resolución* en la que ordenamos la consolidación de los recursos KLCE202301314 y KLCE202301325, a tenor con la Regla 80.1 del Reglamento de este Tribunal, 4 LPRA Ap. XXII-B, R. 80.1.

El 14 de diciembre de 2023, emitimos una *Resolución* en la que expedimos el auto, ejercimos nuestra discreción al amparo de

la Regla 79(C) del Reglamento de este Tribunal, *supra*, R. 79(C) y ordenamos la paralización de los procedimientos ante el TPI.

El 12 de enero de 2024, el comisionado Escalera Rivera presentó un alegato en oposición al recurso de certiorari radicado por los hermanos Avilés Colón. Por su parte, el 16 de enero de 2024, los hermanos Avilés Colón presentaron su alegato en oposición al recurso presentado por el ELA.

En atención a los errores planteados por ambas partes, procedemos a exponer la normativa jurídica atinente a este recurso.

**III.**

**A. *Certiorari***

El auto de *certiorari* es un vehículo procesal extraordinario y discrecional que permite que un tribunal de mayor jerarquía revise determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *McNeil Healthcare, LLC v. Mun. Las Piedras*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La característica principal de este recurso es la discrecionalidad que nos asiste para autorizar la expedición y adjudicar la controversia en sus méritos. *IG Builders et al. v. BBVAPR, supra*, pág. 338; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580, 596 (2011). El máximo foro judicial definió que la discrecionalidad es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964). Empero, nuestra discreción no es absoluta en vista de que no podemos abstraernos del Derecho, debido a que constituiría abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

Por otro lado, nuestra discrecionalidad no opera en el abstracto ni está ausente de otros parámetros. *Rivera et al. v. Arcos Dorados et al., supra; 800 Ponce de León v. AIG*, 205 DPR 163, 176

(2020); *IG Builders et al. v. BBVAPR, supra,* pág. 338; *Rivera Figueroa v. Joe´s European Shop, supra.* Pues, con el objetivo de que podamos ejercer sabiamente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* R. 40, establece los criterios que debemos considerar al atender la solicitud de expedición del auto de *certiorari.* En particular, dispone lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. *Íd.*

Por otro lado, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, regula las instancias en las que podemos revisar determinaciones interlocutorias del Tribunal de Primera Instancia. *Rivera et al. v. Arcos Dorados et al., supra*; *McNeil Healthcare, LLC v. Mun. Las Piedras, supra*, pág. 404; *IG Builders et al. v. BBVAPR, supra*, págs. 336-338. A saber, un recurso de *certiorari* sólo se expedirá cuando se recurra de una resolución u orden al amparo de la Regla 56 de Procedimiento Civil, *supra,* R. 56 y Regla 57 de Procedimiento Civil, *supra,* R. 57 o se deniegue una moción de carácter dispositivo. Por excepción, esta Curia apelativa podrá revisar órdenes o resoluciones interlocutorias dictadas por el

tribunal de instancia cuando se recurra de decisiones sobre: (1) admisibilidad de testigos de hechos o peritos esenciales, (2) asuntos relativos a privilegios evidenciarios, (3) anotaciones de rebeldía, (4) casos de relaciones de familia, (5) casos que revisten interés público, o (6) cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, *supra,* R. 52.1.

De no estar presentes los criterios antes esbozados, corresponde abstenernos de expedir el auto de *certiorari,* de forma que se continúe con los procedimientos en el tribunal de instancia.

### B. **PROMESA**

El Congreso de Estados Unidos aprobó PROMESA, *supra,* con el objetivo de lidiar con la situación económica de Puerto Rico. *Vera González v. ELA,* 199 DPR 995, 996 (2018) (Martínez Torres, voto particular de conformidad). "El Título III de PROMESA establece el procedimiento para que el gobierno de Puerto Rico pueda presentar una petición de quiebra." *Íd.* En tal virtud, el Título III de PROMESA, supra, incorporó ciertas disposiciones del Código de Quiebras federal, *supra,* como las concernientes a la paralización automática, *supra,* secs. 362 y 922, y al descargue de las obligaciones, *supra,* sec. 524(a). *Íd.; JMG Investment v. ELA et al.,* 203 DPR 708, 722 (2019). Importante es que, a tenor con el Artículo 1, Sección 8 de la Constitución de los Estados Unidos, la legislación sobre quiebras constituye campo ocupado para los estados, por lo que están vedados de legislar en su contravención. *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 490 (2010).

Por un lado, la paralización automática es una de las protecciones básicas que se le ofrece a la parte deudora, con el propósito de liberarlo de las presiones financieras de las reclamaciones de la parte acreedora mientras se dilucida el procedimiento de quiebra, a la vez que resguarda al acreedor de las

reclamaciones de otros acreedores. *Vera González v. ELA, supra*; *Lacourt Martínez et al. v. JLBP et al.*, 198 DPR 786, 788 (2017) (*per curiam*); *Lab. Clínico et al. v. Depto. Salud et al.*, 198 DPR 790, 791 (2017) (*per curiam*). A saber, "[e]l efecto de la paralización automática es detener los pleitos que involucren reclamaciones monetarias y que se estén llevando contra el deudor al momento de radicar la petición de quiebra o aquellas que hayan podido comenzar antes de la presentación de la petición de quiebra". *Vera González v. ELA, supra,* véase Código de Quiebras federal, *supra,* sec. 362(a). En tal eventualidad, los tribunales estatales carecen de jurisdicción para continuar atendiendo los pleitos en los que existe una reclamación monetaria contra el deudor que presentó la petición de quiebra. *Íd.* No obstante, los tribunales estatales poseen jurisdicción concurrente para examinar si el caso ante su consideración está paralizado o si está sujeto a las excepciones de la referida paralización. *Íd.; Requena Mercado et als. v. Policía de PR,* 205 DPR 285, 291 (2020). *Lacourt Martínez et al. v. JLBP et al.*, *supra*; *Lab. Clínico et al. v. Depto. Salud et al.*, *supra.* Así las cosas, los tribunales estatales deben archivar administrativamente el caso hasta tanto se certifique que se levantó la paralización. *JMG Investment v. ELA et al., supra.* Importante es que dicho archivo administrativo no pone fin definitivo al asunto litigioso. *Íd.*, pág. 724. Ahora bien, la paralización automática cesa cuando culmine el procedimiento de quiebra o el tribunal federal levante la paralización. *Vera González v. ELA, supra.*

Por otro lado, el proceso de descargue de las obligaciones del deudor opera como un injunction que prohíbe el cobro de las deudas del deudor. *Íd.* No obstante, "el descargue de una obligación del deudor es el fin último del proceso de quiebras y ocurre al final del mismo." *Íd.*

Es un hecho conocido que el 3 de mayo de 2017, el Gobierno de Puerto Rico presentó una petición de quiebra al amparo del Título III de PROMESA, *supra*. *Depto. De Hacienda v. COTIARI*, 203 DPR 1049, 1055 (2020). Por ello, entró en vigor la paralización automática de aquellos pleitos que involucraban reclamaciones monetarias presentadas o que se pudieran presentar contra el ELA. *Íd.*

El 18 de enero de 2022, el Tribunal Federal de Distrito emitió un *Confirmation Order*. Por virtud de esto, se confirmó el *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico*, conocido como el Plan de Ajuste de la Deuda, efectivo desde el 15 de marzo de 2022. A partir de dicha fecha, entró en vigor el inciso 59 del *Confirmation Order*, el cual estableció un *injunction* permanente que reemplazó la paralización automática del Código de Quiebras federal, *supra*. El aludido inciso 59 del *Confirmation Order* dispone lo siguiente:

> 59. Injunction on Claims. Except as otherwise expressly provided in section 92.11 of the Plan, this Confirmation Order, or such other Final Order of the Title III Court that is applicable, all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the

Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability discharged pursuant to the Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property. Notwithstanding the foregoing, without prejudice to the exculpation rights set forth in section 92.7 of the Plan and decretal paragraph 61 hereof, nothing contained in the Plan or this Confirmation Order is intended, nor shall it be construed, to be a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors.

Es decir, el inciso 59 del *Confirmation Order* tuvo el efecto de paralizar las reclamaciones pasadas, presentes y futuras contra el ELA.

Por otro lado, la Sección 92.2 (a) del Plan de Ajuste de la Deuda tuvo el efecto de descargar todo reclamo que surgió en todo o en parte contra el ELA, antes de la fecha de efectividad del Plan, es decir, el 15 de marzo de 2022. En particular, dispone lo siguiente:

92.2 Discharge and Release of Claims and Causes of Action:
a) Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 92.7 hereof, nothing contained in the Plan or the Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third-party release of the PSA Creditors, AFSCME, and of their respective Related Persons by Creditors of the Debtors. Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code

and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan. For the avoidance of doubt, nothing contained herein or in the Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.

La Sección 1.135 del Plan de Ajuste de la Deuda establece que un *claim* es:

Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, Causes of Action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.

Resulta importante destacar que quedaron resguardados por el *injunction* permanente "[a]ny agency, department, office, public corporation, trust, fund, system, instrumentality, political subdivision, taxing authority, or municipality of the Government of Puerto Rico." Sin embargo, la Sección 1.277 del Plan de Ajuste de la Deuda expresamente establece que:

**"Government Released Claims" shall not include any and all rights, privileges, Claims, demands, liabilities, or Causes of Action of any and every kind, character or nature whatsoever** (a) against (i) the Debtors (or their successors, including Reorganized Commonwealth) or COFINA arising from or relating to the Debtors' obligations pursuant to the Plan or the securities to be issued pursuant to the Plan or that were issued pursuant to the COFINA Plan, or (ii) a Government Releasee unrelated to the Debtors or the

Claims discharged pursuant to the terms and provisions of the Plan**, (b) arising from or related to any act or omission that constitutes intentional fraud or willful misconduct** or (c) arising from or related to claims or bonds issued, or contracts or leases entered into, by AFICA, CCDA, HTA, MBA, MFA, PFC, PRASA, PRIDCO, PRIFA, UPR and PREPA, other than CW/Convention Center Claims, CW/HTA Claims, CW/MBA Claims, CW/PRIFA Rum Tax Claims, and the CW Appropriations Claims. (Énfasis suplido).

Además, la Sección 1.421 del Plan de Ajuste de la Deuda expresamente dispone, en lo pertinente, que no se deben considerar descargadas las causas de acciones o reclamaciones por negligencia crasa, conducta dolosa o fraude intencional. Es decir:

> **"Released Claims" is not intended to include, nor shall it have the effect of including, Claims or Causes of Action unrelated to the Debtors or Claims or Causes of Action for gross negligence, willful misconduct or intentional fraud asserted**, or that could have been asserted, whether sounding in contract or tort.[30] (Énfasis suplido).

El inciso 60 del *Confirmation Order* contiene un interdicto sobre cualquiera de los *released claims* descargadas en virtud de la Sección 92.5 del Plan de Ajuste de la Deuda y el inciso 57 del *Confirmation Order*. Específicamente, la Sección 92.5 del Plan de Ajuste de la Deuda y el inciso 57 del *Confirmation Order* eximieron las *released claims* de los "Debtors, Reorganized Debtors, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit" en contra de cualquier parte liberada.

Por otra parte, para que se atienda la reclamación de una parte dentro de los procedimientos del Título III del PROMESA, *supra*, se requirió radicar un *proof of claim*.

> 1.51 **Administrative Claim Bar Date**: **Unless otherwise ordered by the Title III Court, the date established by the Title III Court and set forth in the Confirmation Order as the last day to file proof of Administrative Expense Claims, which date shall be no more than ninety (90) days after the Effective Date, after which date, any Administrative Expense Claim, proof of which has not been filed, shall be**

---

[30] *Íd.* pág. 311.

**deemed forever barred, and the Debtors and Reorganized Debtors shall have no obligation with respect thereto; provided, however**, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim (a) shall have been incurred (i) in accordance with an order of the Title III Court or (ii) with the written consent of the applicable Government Parties expressly granting such Administrative Expense Claim, (b) is a Professional Claim, (c) is an intergovernmental Claim, (d) is an Administrative Expense Claim of the IRS for the payment of taxes incurred by any of the Debtors during the period from and after the Commonwealth Petition Date, the ERS Petition Date or the PBA Petition Date, as applicable, or (e) is the subject of a pending motion seeking allowance of an administrative expense pursuant to Bankruptcy Code section 503(b) as of the entry of the Confirmation Order.

1.52 **Administrative Expense Claim**: **A Claim against the Debtors or their Assets constituting a cost or expense of administration of the Title III Cases asserted or authorized to be asserted, on or prior to the Administrative Claim Bar Date**, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the Effective Date, and otherwise complying with applicable Puerto Rico law, including, without limitation, subject to the occurrence of the Effective Date, and except as provided in Section 3.5 hereof, Consummation Costs and PSA Restriction Fees; provided, however, that, under no circumstances shall an Administrative Expense Claim include the PBA Administrative Expense Claim.[31] (Énfasis suplido).

El 20 de octubre de 2022, el Tribunal Federal de Distrito emitió una *Order Extending Administrative Claim Bar Date for Certain Parties and Modifying Discharge Injunction* (Modificación del *injunction*), en la que se extendió el período para radicar un *administrative claim*, siendo hasta el 18 de enero de 2023. Sin embargo, se aclaró que el "Extended Administrative Claim Bar Date shall not apply to any Administrative Expense Claim (i) asserted on account of professional services provided to the Debtors in connection with the Title III Cases, or (ii) arising solely in connection with the Title III Cases." Se expuso que el requisito de radicar un *administrative expense claim*, a tenor con el inciso 44 del *Confirmation Order*:

---

[31] *Íd.*, pág. 266.

> [S]hall not apply to any of the following claims or causes of action arising from and after the applicable petition date with respect to the Commonwealth, ERS, and PBA and prior to the Effective Date: (i) Eminent Domain/Inverse Condemnation Claims, (ii) claims for property seized by the Debtors pursuant to the Uniform Forfeiture Act of 2021, 34 L.P.R.A. 1724 et seq., (iii) claims for attorneys' fees and costs pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C. 1400 et seq., (iv) tax refund claims, and (v) claims authorized to be asserted pursuant to 32 L.P.R.A. § 3077(a), to the extent the amount of such claim asserted is within such statutory limitation of $75,000 or $150,000, as applicable.[32]

Además, la Modificación del *injunction* estableció que los interdictos contenidos en la Sección 92.3 del Plan de Ajuste de la Deuda, y el inciso 59 del *Confirmation Order* "**are modified solely to the limited extent of allowing litigation with respect to claims authorized to be asserted pursuant to 32 L.P.R.A. § 3077(a), to the extent the amount of such claim asserted is within such statutory limitation of $75,000 or $150,000, as applicable, to proceed to final judgment and execution, including any appeals**." (Énfasis nuestro).

En *Osuji v. Departamento de la Familia, supra,* el Departamento de la Familia removió a un infante de su hogar, tras sus funcionarios opinar que se encontraba bajo peso. El 13 de octubre de 2020, los progenitores del infante presentaron un *Affidavit for Writ of Habeas Corpus and Writ of Mandamus* en contra de la agencia, y el 21 de diciembre de 2020 presentaron un *Supplemental Complaint* para añadir a los funcionarios en su carácter personal y oficial. El 23 de mayo de 2022, el ELA, en representación de los funcionarios en su capacidad personal, presentó un *Notice of Injunction,* en el que arguyó que el Tribunal Federal de Distrito carecía de jurisdicción para continuar con los procedimientos. Lo anterior, pues el 18 de enero de 2022 dicho foro había confirmado el Plan de Ajuste de la Deuda, el cual acumuló

---

[32] *Íd.*

permanentemente las reclamaciones radicadas en contra del ELA que no fueron atendidas dentro del Plan de Ajuste de la Deuda. El 3 de abril de 2023, el Tribunal Federal de Distrito emitió una *Opinion and Order*, en la que resolvió que procedían las reclamaciones en contra de los funcionarios en su capacidad personal, puesto que no demostraron satisfactoriamente cómo el *injunction* a favor del ELA les beneficiaba personalmente. Dicho Tribunal resolvió, además, que procedía el *injunction* a favor del ELA, de conformidad con el inciso 59 del *Confirmation Order*, el inciso 56 del *Confirmation Order* y la Sección 92.2 del Plan de Ajuste de la Deuda. Específicamente concluyó que los progenitores del infante no eran deudores, deudores reorganizados ni agentes de desembolso, o nadie reclamando a través de estos, y por ello, no les aplicaban las disposiciones de interdicto relacionadas a *released claims*. Consecuentemente, dictaminó que la excepción respecto a actos de conducta dolosa era irrelevante en aquel caso. De igual modo, determinó que, conforme a la Sección 92.2 (c) del Plan de Ajuste de la Deuda, los progenitores del infante no eran *GO/PBA Creditors* o personas relacionadas, por lo que tampoco les aplicaban las s 1.421 y 1.277 del Plan de Orden.

### C. <u>Representación legal de un funcionario público</u>

En otro extremo, existen algunas instancias en las que los funcionarios públicos demandados en su carácter personal pueden beneficiarse de la representación legal del Estado, así como el pago de la sentencia que recaiga en su contra. *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 39 (2014). *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 986-987 (2011). En tal sentido, el Artículo 12 de la Ley de Pleitos contra el Estado, *supra*, sec. 3085, dispone lo siguiente:

> Todo funcionario, ex funcionario, empleado o ex empleado del Estado Libre Asociado de Puerto Rico que sea demandado en daños y perjuicios en su carácter

personal, **cuando la causa de acción se base en alegadas violaciones a los derechos civiles del demandante, debido a actos u omisiones incurridos de buena fe, en el curso de su trabajo y dentro del marco de sus funciones**, **podrá solicitar que el Estado Libre Asociado de Puerto Rico le provea representación legal y posteriormente asuma el pago de cualquier sentencia que pueda recaer sobre su persona.** Los Directores Ejecutivos, ex Directores Ejecutivos, los miembros y ex miembros de las Juntas de Gobierno de las corporaciones públicas e instrumentalidades del Gobierno, los alcaldes y ex alcaldes y los funcionarios y ex funcionarios de los municipios, así como los miembros y ex miembros del Cuerpo de la Policía Municipal en los diferentes rangos, estarán cubiertos por lo aquí dispuesto, excepto que en lo relativo al pago de sentencias se regirán por lo provisto en el Artículo 19 de esta ley (32 L.P.R.A. § 3092). Las acciones que puedan incoarse bajo las disposiciones de esta ley no estarán cubiertas por lo dispuesto en este Artículo. Asimismo, lo aquí provisto no debe entenderse bajo ningún concepto como que convierte al Estado en asegurador de los servidores públicos antes señalados, ni que constituye una renuncia de la inmunidad soberana del Estado Libre Asociado.

Ahora bien, cuando las actuaciones u omisiones incurridos por los funcionarios, exfuncionarios, empleados o exempleados constituyan un delito; ocurran fuera del marco de sus funciones oficiales; medie negligencia inexcusable o cuando jurisprudencialmente se haya establecido un estado de derecho diferente mediante sentencia final y firme, no serán cubiertos bajo las disposiciones del Artículo 12 de la Ley de Pleitos contra el Estado, *supra*, sec. 3085. Véase Art. 15 de la Ley de Pleitos contra el Estado, *supra*, sec. 3088.

El beneficio principal del Artículo 12 de la Ley de Pleitos contra el Estado, *supra*, sec. 3085, es la representación legal. *Cirino González v. Adm. Corrección et al., supra*, pág. 40; *Ortiz et al. v. ELA*, 158 DPR 62, 71-72 (2002). Por ello, cabe destacar que el **hecho de que el Estado provea el beneficio de la representación legal no conlleva que automáticamente pague cualquier sentencia que en su día pueda recaer contra el funcionario público.** *Cirino González v. Adm. Corrección et al., supra.* En tal sentido, "si recae

sentencia monetaria contra los [funcionarios públicos] en su carácter personal, el ELA no responde automáticamente, sino que debe presentarse una petición a esos efectos." *Íd.*, pág. 48. Pues, el Artículo 14 de la Ley de Pleitos contra el Estado, *supra*, sec. 3087 dispone que el Secretario de Justicia determinará en qué casos se asumirá la representación legal y "posteriormente, **considerando los hechos que determine probados el tribunal o que surjan de la prueba desfilada**, decidirá si procede el pago de la totalidad de la sentencia". Véase *Ortiz et al. v. ELA, supra.* (Énfasis nuestro). **"De acuerdo a la Ley y el Reglamento, la determinación inicial de ofrecer representación legal al funcionario público demandado en su carácter personal no obliga al Estado a asumir el pago de la sentencia que en su día se dicte contra dicho funcionario"**. *Íd.* (Énfasis nuestro). De hecho, el propio Artículo 12 de la Ley de Pleitos contra el Estado, supra, sec. 3085, expresamente dispone que estos beneficios no se pueden entender bajo ningún concepto de que el ELA es el asegurador de los servidores públicos representados. *Íd.*

Uno de los propósitos de estos beneficios radica en que en el foro federal el ELA no puede ser demandado directamente, sino que únicamente se puede instar una acción directamente contra el funcionario público. *Cirino González v. Adm. Corrección et al., supra*; *Torres Santiago v. Depto. Justicia, supra*, pág. 987; *Ortiz et al. v. ELA, supra*, pág. 75.

Así las cosas, "la acción contra el Estado directamente y la acción contra sus funcionarios en su carácter personal son dos causas de acción <u>separadas</u>. En la primera, el Estado figura como la parte demandada. En la segunda, el demandado es el funcionario en su carácter personal." *Cirino González v. Adm. Corrección et al., supra.* **"Lo anterior indica claramente que cuando se demanda a un funcionario en su capacidad personal, el Estado no es parte**

**del pleito, aunque le haya otorgado representación legal."** *Íd.* (Énfasis nuestro). Por ello, en *Cirino González v. Adm. Corrección et al., supra,* el Tribunal Supremo resolvió que el hecho de que el ELA provea la representación legal de un funcionario público no constituye un acto sustancial para convertir al Estado en parte del pleito y concluir que se sometió voluntariamente a la jurisdicción del tribunal como parte indispensable y separada de la persona del funcionario demandado. *Íd.*

Persuasivamente, en *Guadalupe-Báez v. Pesquera,* 269 F. Supp. 3d 1 (2017), el Tribunal Federal de Distrito resolvió que el hecho de que el Departamento de Justicia le estuviera brindando representación legal o potencialmente proporcionara el pago por una sentencia adversa contra un funcionario demandado en su carácter individual, era un *non sequitur.* Es decir, no le aplicaba la paralización automática de PROMESA, *supra.* El Tribunal consignó lo siguiente: "The Commonwealth's discretion to defend and indemnify personal capacity claims means that personal capacity claims do not "seek to enforce a claim against the Debtor" under PROMESA's stay provisions." Por otro lado, en *Colón-Colón v. Negrón-Fernández,* 2018 U.S. Dist. LEXIS 80968 (2018), el Tribunal Federal de Distrito, estableció lo siguiente:

> the "debtor" in a case between a plaintiff and a government official sued in his personal capacity is the government official. If the Commonwealth opts to represent the government official under Law 9, the Commonwealth is a "debtor" of the government official, not the plaintiff. Even if the practical arrangement has been for the Commonwealth to pay the plaintiff directly on the government official's behalf, the practical arrangement does not change the underlying structure. The party indebted to the plaintiff is the government official, not the Commonwealth representing the government official.

En cambio, en *Betancourt-Rivera v. Vázquez-Garced,* 314 F. Supp. 3d 367 (2018), el Tribunal Federal de Distrito en reconsideración, resolvió que la paralización automática era

extensiva a los funcionarios públicos puesto que, una sentencia a favor de la parte demandante constituiría un *liability claim,* puesto que el ELA le estaba proveyendo representación legal. Véase también *Montalvo-Febus v. De Jesús*, 2018 U.S. Dist. LEXIS 192530 (2018); *Víctor J. Salgado & Assocs v. Cestero-Lopategui, supra.*

A la luz de la normativa jurídica antes pormenorizada, procedemos aplicarla a los hechos de este caso.

### III.

En el presente caso, los hermanos Avilés Colón plantearon que esta Curia apelativa debe revocar la *Resolución* emitida el 23 de octubre de 2023, puesto que no debía paralizar la demanda exclusivamente contra el comisionado Escalera Rivera en su capacidad personal por virtud de la quiebra del ELA bajo PROMESA, *supra.* Arguyeron que como los hechos de este caso ocurrieron luego del ELA presentar la petición de quiebra, constituye una reclamación *post-petition* que no le aplica el *automatic stay.* Por otro lado, los hermanos Avilés Colón sostuvieron que la reclamación contra el comisionado Escalera Rivera en su carácter personal no podía atenderse como una reclamación administrativa, ya que no es parte de la petición de quiebras y la causa de acción al amparo de la Ley de Derechos Civiles, *supra,* no constituye una reclamación administrativa. Además, alegaron que del *Confirmation Order* no surgió expresamente que los pleitos sobre violación a los derechos civiles por hechos ocurridos luego de la petición de quiebra debían paralizarse. Por último, expresaron que las causas de acción por conducta dolosa estaban excluidas del *injunction* del Plan de Ajuste de la Deuda.

Por su parte, en su alegato en oposición al recurso de *certiorari* de los hermanos Avilés Colón, el comisionado Escalera Rivera esbozó que el TPI actuó parcialmente correcto al reconocer la aplicación del *injunction* permanente sobre la reclamación radicada en su contra

en su carácter personal. Adujo que le aplicaban las disposiciones del inciso 59 y del inciso 68 del *Confirmation Order*. Reiteró que la Sección 1.421 del Plan de Ajuste de la Deuda no aplicaba al caso de marras, ya que las reclamaciones que se exceptúan conllevan una suma líquida, aplicable solo a deudores, deudores reorganizados o agentes de desembolso de pago de deuda. Asimismo, alegó que el único remedio que tenían los hermanos Avilés Colón era presentar una solicitud de gastos administrativos ante el Tribunal Federal de Distrito. Por último, planteó que como la reclamación del pleito de epígrafe asciende a $7,000,000.00, procedía modificar la determinación recurrida para paralizar el pleito en su totalidad y consecuentemente, ordenar el archivo administrativo por virtud del *injunction* permanente del *Confirmation Order*.

En el recurso de *certiorari* presentado por el ELA, dicha parte planteó que incidió el TPI al continuar los procedimientos de este caso, a pesar de carecer totalmente de jurisdicción. El ELA expresó que el Tribunal Federal de Distrito ostenta jurisdicción exclusiva sobre todos los bienes del Estado y posee amplios poderes para emitir remedios como el *injunction*. Por lo anterior, indicó que procede el archivo del pleito de marras. Asimismo, expuso que el pleito de epígrafe no procede porque la cantidad de $7,000,000.00 solicitada como indemnización sobrepasa los límites estatutarios de la Ley de Pleitos contra el Estado*, supra*. Por otro lado, el ELA precisó que conforme con el Plan de Ajuste de la Deuda, no proceden reclamaciones en su contra por conducta intencional o delictiva de sus funcionarios, y reclamaciones que versan sobre hechos ocurridos en o antes de la fecha de efectividad del Plan de Ajuste de la Deuda. Por último, argumentó que, aunque procede el archivo del pleito de marras, los hermanos Avilés Colón podían presentar una solicitud de gastos administrativos ante el Tribunal Federal de Distrito.

Por su parte, los hermanos Avilés Colón especificaron que la Corte de Quiebras federal expresamente autorizó que los tribunales estatales continuaran con el recurso de este tipo de reclamación, a saber:

> 8. If you are a party to a litigation, proceeding, or action asserting a claim pursuant to 32 L.P.R.A. Sec. 3077(a), to the extend the amount of such a claim asserted is within such statutory limitation of $75,000.00 or $150,000.00, as applicable, the injunctions in Sections 92.3 of the Plan and decretal paragraph 59 of the Confirmation Order have been modified to allow such litigation to proceed to final judgment and execution, including any appeals.

Con respecto al planteamiento del ELA sobre la solidaridad con las reclamaciones contra funcionarios en su capacidad personal y si los actos de estos fueron intencionales o delictivos, los hermanos Avilés Colón manifestaron que es prematuro, ya que entendieron que se tratan sobre cuestiones de Derecho que el TPI deberá aquilatar a base de la evidencia admisible que en su día se desfile. Por otro lado, expresaron que las reclamaciones que se alega que excedieron los límites estatutarios no son contra el ELA, sino contra los demás codemandados en su carácter personal, quienes no forman parte de la petición de quiebra presentada por el ELA bajo el Título III de PROMESA, *supra*. Sobre las reclamaciones de gastos administrativos, los hermanos Avilés Colón particularizaron lo siguiente:

> Las reclamaciones de gastos administrativos, por su parte, son definidas en la Sección 1.52 del Plan [de Ajuste de la Deuda] como: **"A Claim against the Debtor or their Assets constituiting a cost or expense of administration of the Title III Cases ... in accordance with Sections 503(b) and 507(a)(2) fo the Bankruptcy Code."** Bajo la Sección 503(b) un gasto administrativo es uno que incluye "the actual, necessary costs and expenses of preserving the estate," o sea los gastos necesarios para mantener al gobierno del E.L.A. operando. Por lo tanto, incluye "wages, salaries and commissions for services rendered after the commencement of the case", incluyendo además algunas contribuciones, multas o penalidades y una compensación razonable por ciertos servicios profesionales ofrecidos por abogados, contables, así como gastos por dietas y millaje. Véase 11 ISC Sections

503(b). [...] **No es un tipo de definición que se utilice en casos y reclamaciones contra el [E]stado por menoscabo de los derechos constitucionales o civiles de sus ciudadanos.** (Énfasis nuestro).

Con respecto a la Modificación del *injunction,* expresaron que en el recurso KLCE202301116*, Christian Peña Betances v. ELA*, un Panel Hermano aclaró lo siguiente:

[E]l Tribunal Federal de Distrito reiteró lo que es un gasto administrativo, precisamente en el caso de In re Financial Oversight and Management Board for Puerto Rico, 635 B.R. 201, 210 (2021) y, a esos fines, expresó que estos incluyen: [The actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the casel.]"'. In re Financial Oversight and Management Board for Puerto Rico, supra, citando a, Mason v. Official Comm. of Unsecured Creditors, 330 F.3d 36, 41 (2003). **Coincidimos con la interpretación que realizó el TPI al concluir que la reclamación del recurrido no se trata de un gasto administrativo sujeto a lo dispuesto en el referido párrafo número 5 de la Orden Modificatoria. Por lo tanto, y al amparo de la Orden Modificatoria concluimos que el TPI posee jurisdicción sobre la materia para ordenar la continuación de los procedimientos en el presente caso.** (Énfasis nuestro).

Esbozados los planteamientos de ambas partes nos encontramos en posición de resolver.

Tras analizar sosegadamente la totalidad del expediente y la normativa jurídica atinente al recurso presentado por los hermanos Avilés Colón, determinamos expedir el auto de certiorari y revocar la *Resolución* emitida por el TPI el día 23 de octubre de 2023. Los hermanos Avilés Colón tienen razón en que el Foro Primario incidió en paralizar la *Demanda* exclusivamente contra el comisionado Escalera Rivera en su capacidad personal por virtud de la quiebra del ELA bajo PROMESA, *supra,* bajo la preocupación de que existiera un riesgo de que el ELA tenga que sufragar por encima del límite estatutario de la Ley de Pleitos contra el Estado, *supra.* En primer lugar, si luego de aquilatar la prueba que se desfile ante sí el TPI resuelve una potencial sentencia en contra del ELA, tanto el Foro Primario como ambas partes reconocen que está la cuantía

delimitada a los límites estatutarios dispuesto en la Ley de Pleitos contra el Estado, *supra*. En segundo lugar, es norma reiterada que la determinación inicial del Departamento de Justicia de proveer representación legal a un funcionario público no es un eslabón para que automáticamente el ELA sufrague la potencial sentencia que en su día recaiga en contra de dicho funcionario público, luego de que el Foro Primario le atribuya responsabilidad tras considerar los hechos que determine probados. Véase *Cirino González v. Adm. Corrección et al., supra*; *Ortiz et al. v. ELA, supra*. Pues, la Ley de Pleitos contra el Estado, *supra*, y el Reglamento del Departamento de Justicia no obliga al Estado a asumir el pago de la potencial sentencia que se dicte en contra del funcionario. En tercer lugar, el Tribunal Supremo ha resuelto que, aun cuando el ELA provea representación legal a un funcionario público, es una parte separada de la persona del funcionario demandado. Véase *Cirino González v. Adm. Corrección et al., supra*. Es decir, el potencial dictamen en contra del funcionario público no se tiene que considerar como una extensión que sobrepasa los límites estatutarios del ELA, pues como estableció el Tribunal Federal de Distrito en *Colón-Colón v. Negrón-Fernández, supra*, existe una distinción entre el ELA y el funcionario público como deudores de la potencial sentencia a favor de la parte demandante, que, en este caso, son los hermanos Avilés Colón. Además, tal como aduce dicha parte, las reclamaciones presentadas al amparo de la Ley de Derechos Civiles, *supra*, como la presentada en contra del comisionado Escalera Rivera, no son gastos administrativos. Por último, el comisionado Escalera Rivera en su carácter personal no es parte de la petición de quiebras ante el Tribunal Federal de Distrito, más no nos demostró un ápice de evidencia sobre cómo se beneficiaría del *injunction* a favor del ELA.

Por otro lado, al analizar los planteamientos de ambas partes en el recurso presentado por el ELA, determinamos denegar el auto de *certiorari* solicitado. Nuestra evaluación del expediente nos permite concluir que la determinación recurrida es razonable y correcta en Derecho. En primer lugar, el TPI aún no ha aquilatado la prueba para hacer una determinación de derecho en cuanto al reclamo de solidaridad del ELA por los actos intencionales o acciones delictivas de los funcionarios públicos. En segundo lugar, de los hermanos Avilés Colón lograr probar su causa de acción contra cada uno de los codemandados en el juicio plenario, el dictamen que pueda advenir contra cada funcionario público en su carácter personal, aun cuando el comisionado Escalera Rivera esté representado por el Departamento de Justicia, es totalmente separado a la cuantía que el ELA tuviera que sufragar, condicionado a los límites estatutarios dispuestos en la Ley de Pleitos contra el Estado*, supra.* En tales circunstancias, le corresponde al TPI realizar cualquier determinación en derecho sobre la aplicabilidad del límite estatutario, a base de la doctrina prevaleciente. Por lo anterior, a tenor con la normativa jurídica de la Regla 52.1 de Procedimiento Civil, *supra,* R. 52.1 y la Regla 40 del Reglamento de este Tribunal, *supra,* R. 40, no se justifica nuestra intervención con la *Resolución* emitida el 25 de abril de 2023.

## IV.

Por los fundamentos antes expuestos, se expide el auto de *certiorari* presentado por los hermanos Avilés Colón y se revoca parcialmente la *Resolución* del 23 de octubre de 2023, a los fines de continuar el caso con respecto al comisionado Escalera Rivera en su carácter personal. Se devuelve el caso para que se continúen los procedimientos, de conformidad con lo aquí dispuesto.

Por lo aquí resuelto, se deniega la expedición del auto de *certiorari* presentado por el ELA.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

La jueza Cintrón Cintrón disiente sin opinión escrita.

La Jueza Rivera-Marchand hace constar que emite un voto de conformidad correspondiente a lo resuelto en el recurso número KLCE202301314 y concurre con la determinación expuesta en el recurso número KLCE202301325 por entender que la presente reclamación por violación de derechos civiles es de naturaleza *post petition* a la cual resulta inaplicable la definición de reclamaciones de gastos administrativos que se atienden bajo el proceso de quiebra del Gobierno de Puerto Rico según dispuesto en la Orden de Modificación emitida en el foro federal (Corte de Título III).


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones